MARTIN, WISE & FITZHUGH ET AL. v. JAMES B. JOHNSON.

No. 817.

**1. Pleading—Statutory Penalty.**

In an action to recover a penalty imposed by general statutory law, the statute need not be pleaded.

**2. Constitutional Law—Excessive Fines.**

The eighth amendment of the Federal Constitution, prohibiting excessive fines, is a limitation upon the authority of Congress, and has no application to the State governments.

**3. Public Weighers—Constitutionality of Statute—Penalty Not Limited.**

The statute providing for public weighers (Acts 1879, p. 116) and prohibiting any one other than a public weigher from weighing certain produce under a penalty of not less than five dollars, is not unconstitutional because it fails to fix the maximum amount of the penalty that may be imposed.

**4. Same—Weighing on Verbal Request of Owner.**

Under the amendatory Act of 1883, the owner of the produce mentioned may, where he is personally present, lawfully have it weighed upon verbal authority by one not a public weigher, and without the written instructions required by section 8 of the Act of 1879.

**5. Same—One Action for Several Penalties.**

Under the Act relating to public weighers, more than one penalty may be recovered in the same suit.

APPEAL from Fannin. Tried below before Hon. E. D. McCLELLAND.

*Burdett & Connor* and *H. D. McDonald,* for appellants.—1. No recovery can be had under a statute, penal or quasi-penal, unless the plaintiff declares upon the statute under and by virtue of which he claims the penalties for which he sues; that is, he must either set forth the statute which he claims has been violated by the defendant, in such manner as to entitle him to a recovery, or else he must so specifically refer to it as to make it certain to a reasonable intent what statute has been violated by the defendant in such manner as will entitle him to a recovery. Section 8, Acts 1879, p. 116; Rev. Stats., art. 4089; 5 Am. & Eng. Enc. Law, 53; 2 Sedg. Dam. (7th ed.), 565, 573, 588; 1 Suth. Dam., 770; 17 Am. & Eng. Enc. Law, 262; Palmer v. York Bank, 36 Am. Dec., 710; Reed v. Northfield, 23 Id., 662; Bartlett v. Crozier, 8 Id., 437; Sedg. Const. Stat. and Const. Law, 89-92; 10 Am. & Eng. Enc. Law, 572, note 4.

2. The Act is in conflict with section 13 of the Bill of Rights (art. 1) of the Constitution of the State of Texas, in that no limit or maximum of the penalty being fixed, said section authorizes the exercise by the courts and juries of unrestrained arbitrary power, and the imposition of excessive fines and cruel and unusual punishments. Const., art. 1, secs. 13 and 19 of the Bill of Rights; Penal Code, arts. 1, 6; Amendments Const. U. S., art. 8; Teid. Pol. Pow., sec. 3; 1 Bish. Cr. Law, secs. 933, 934; Cooley's Con. Lim, 5 ed., 433-435, 402-404; Cooley's Con. Lim, 6 ed., 432-434, 401-403; 5 Wall., 470; Yickwo v. Hopkins, 118 U. S., 369; Dent v. West Virginia, 129 U. S., 123; Hurtado v. California, 110 U. S., 527; Commonwealth v. Sherman, 85 Ky., 686; Bank v. Cooper, 24 Am. Dec., 517 and note, pp. 538-45; Railway v. Baty, 6 Neb., 37, (s. c. 29 Am. Rep., 356).

3. "The court erred in overruling appellants' ninth special exception to said petition which is as follows: Defendants further except to said fourth amended original petition in so far as it seeks to recover for more than one penalty up to the time of bringing suit." 2 Will. C. C., sec. 168; Parks v. Railway, 13 Lea 1, (s. c. 49 Am. Rep., 655); Railway v. Green, 86 Penn. St., 427, (s. c. 27 Am. Rep., 718, and note 722).

4. Under the act of 1883, any person has the right to weigh cotton, wool or hides, when requested so to do, by the owner or owners thereof; and any owner of cotton, wool or hides, has the right to employ any person whom he may desire to weigh the same. Coffin v. Rich, 45 Me. 507, (s. c. 71 Am. Dec., 559); End. Int. Stat., secs. 5-9, 24, 329-331.

*Hale & Hale* and *R. Wooldridge,* for appellee.—Under article 4089, Sayles' Statutes, it is a violation of the law for a cotton buyer to employ any one to weigh cotton bought by him, other than a public weigher or his deputy, and it is no defense to an action for violating said

statute, to show that the seller requested such employe to weigh his cotton. Sayles' Civ. Stats., arts. 4089, 4082, 3138, par. 6, and notes 11 13, 14, 18, 19 and 20; Watts v. State, 61 Texas, 184; Roberts v. Yarboro, 41 Texas, 449; Brooks v. Hicks, 20 Texas, 666; Laughter v. Seela, 69 Texas, 183; United States v. Dickson 15 Peters, 165; Wood v. United States, 16 Peters, 336; Henderson v. Tobacco, 11 Wallace, 656; Louisiana v. Taylor, 105 U. S., 459; Red Rock v. Henry, 106 U. S., 601; Exparte Crow Dog, 109 U. S., 570; Erwin v. Blanks, 60 Texas, 584; Duncan v. Taylor, 63 Texas, 648; Higgs v. Wrinker 74 Texas, 401; Brown v. Chancellor, 61 Texas, 444; State v. Marshall, 13 Texas, 56; Russell v. Earquart, 55 Texas, 355; McInery v. Galveston, 58 Texas, 340; Stone v. Hill, 72 Texas, 540; Oates v. National Bank, 100 U. S., 243; Vermont Loan & Trust Co. v. Whitehead, 35 Am. and Eng. Corp. Cases 254; Bennett v. American Express Co., 23 Am. St. Rep., 377; Bowen v. Lease, 5 Hill, 225; Barber's Election, 86, Pa. St., 400; Denn v. Reed, 10 Peters, 526; Morris v. Canal Ry. Co., 1 C. E. Green, (N. J.), 428; McNeeley v. Woodruff, 1 Green (Law), 356; Bishop's Written Law secs. 155, 182, 193, 102, 249, 157, 159, 153, 155, 200; Endlich on Const. of Stats., secs. 186, 210, 337.

FINLEY, ASSOCIATE JUSTICE.—Appellants make the following statement of the nature of this suit which is accepted as substantially correct by appellee:

Appellee originally brought three suits, one against each of appellants, claiming damages from each of them for substantially the same cause set out in his fourth amended original petition. They were instituted in March, 1887. Subsequently (April 18, 1890), by an order made in the cause against Martin, Wise & Fitzhugh, both of the other causes were consolidated with it.

On September 4, 1893, plaintiff (appellee) filed his fourth amended original petition, alleging, in substance: (1) The consolidation above mentioned.

(2) That the appellants, Martin, Wise & Fitzhugh, and Johnson and Long, were then and were when the suit was brought, members, stockholders, officers and directors of the Lamar Warehouse Company, and that each and all of the defendants would be styled and treated and charged as joint tort feasors in the matters thereinafter set forth; that Lamar Warehouse Company was chartered June 4, 1883, and its business, as expressed in its charter, was to do a general warehouse and commission business, "to receive, store, house and ship cotton or other goods."

(3) That "sometime in August, 1883, in order to protect the sellers of cotton, the Commissioners' Court of Lamar County made, passed and entered of record an order providing for the appointment of a public weigher for Paris and Blossom Prairie in said county of Lamar, to act until the next general election thereafter and for the election of four cotton weighers in said county of Lamar, at the general election next thereafter, as provided by law, who should be elected by the qualified

voters of said county, thereby establishing the office of public weigher in said county, and made the same elective at the next election thereafter."

(4) That on or about November 4, 1884, he was by the legal voters, etc., duly and legally elected to the office of public weigher in and for said county of Lamar, for the term of two years after said election next following, to act as such in the city of Paris in said county and State; that immediately thereafter he qualified as such public weigher as the law provides, by taking the oath and giving the bond required by law, that he at once entered upon the discharge of his duties, etc.

(5) That he was then and there, and up to the 5th day of November, 1886, ready and willing to weigh all bales of cotton, etc., which were required or were necessary to be weighed in said Lamar County, and which were brought to said city for sale by the owners or producers thereof or their agents.

(6) That immediately after his election and qualification, and on divers days since then, and while he was public weigher as aforesaid, he offered to defendants his services as public weigher and offered to weigh by himself and by deputies, all bales of cotton which they or either of them might buy or desire weighed; that they each refused to allow him or any deputy of his to weigh any cotton for them, or for any person from whom they bought or received cotton.

(7) That Martin, Wise & Fitzhugh and Johnson and Long were on November 4, 1883, and have ever since been engaged in the business of buying cotton in the city of Paris.

(8) That from September 1, 1885, to February 1, 1886, Martin, Wise & Fitzhugh so bought in the city of Paris as many as nine thousand bales of cotton, none of which was weighed by the public weigher or deputy public weigher, and was bought from the owners and producers thereof by them, and that all the cotton so bought by them during that time was weighed by P. M. Speairs or A. B. Long, neither of whom was a public weigher or deputy public weigher, and both of whom were employed and paid by defendants to weigh cotton bought by them from the owners and producers thereof and delivered at Paris by wagons, and the said Speairs and Long were employed by the defendants to weigh all the cotton bought by them and each of them, and they did so weigh under said employment all cotton bought by each and all of the defendants during said time.

(9) Substantially the same allegations are made as to the defendants Johnson and Long, except that it is charged that they so bought, etc., five thousand bales of cotton.

(10) That during the time from September 1, 1885, to the last day of January, 1886, the defendants Martin, Wise & Fitzhugh and Johnson & Long and Lamar Warehouse Company acting together, employed and paid P. M. Speairs and A. B. Long to weigh, and they did weigh, all the bales of cotton bought by either and all of the defendants during the time plaintiff was public weigher aforesaid, and the said P. M. Speairs and A. B. Long, under and by virtue of said employment, did weigh

all the cotton purchased by either of the defendants, or which was stored in or passed through the Lamar warehouse, and that said cotton was so weighed without the request of owners thereof, or either of them, and when so weighed was not the property of the defendants, or either of them, nor of the said P. M. Spears or A. B. Long.

(11) That during that time Martin, Wise & Fitzhugh and Johnson & Long bought from the owners and producers thereof, from to-wit, J. F. Fleece 23 bales, from Dan Wisely 12 bales, from C. A. DeWitt 13 bales, from P. M. Estes 17 bales from W. Marchbanks 18 bales, from J. R. Wooldridge 25 bales; that he is not able to state the precise day on which defendants purchased any of said cotton, nor can he state the names of any other persons from whom defendants or either of them bought cotton, except as hereinafter shown, so as to locate the precise time the same was purchased or weighed, or the names of the persons from whom it was bought, or the number of bales bought from each person, for the following reasons, to-wit:—During all of said time all of the defendants were buying cotton in the city of Paris brought there from all parts of Red River, Lamar, Fannin, Delta, Hopkins, Franklin counties in Texas, and from the Choctaw and Chickasaw Nations, Indian Territory, which constitute a large territory, a very small number of the citizens whereof are known to plaintiff—besides there were all the time many other persons buying cotton in Paris, who bought a large number of bales in said market; that he has made diligent inquiry to ascertain the names of the persons from whom said defendants bought said cotton, and the precise date of each purchase; that he has propounded interrogatories under articles 2239 and 2240 of the Revised Statutes of Texas to John Martin, Frank Fitzhugh and T. W. Johnson, in order to discover the number of bales bought by or for them, the names of the persons from whom they bought, and the precise date of each purchase, but has been unable to get the information desired; that he has exhausted all the means at his command to ascertain the facts above referred to so as to be able to plead them more specifically, but is unable to get the necessary information, and if the defendants or any of them have such information (which they ought to have, if any one), they conceal it from plaintiff for the purpose of trying to defeat the ends of justice in this suit by preventing a fair trial and full investigation into the merits of this case.

(12) That he have judgment against the defendants and each of them for five dollars a bale for each and every bale of cotton weighed by Spears and Long, as employes of the defendants, in violation of the statute and of plaintiff as public weigher that the evidence may show on the trial of this cause.

September 5, 1893, appellants filed their third amended and third supplemental answers, containing general demurrer and sixteen special exceptions to plaintiff's petition, general denial and special answers. The general demurrer and special exceptions of appellants were each and all

overruled. There was a verdict and judgment for plaintiff against all the defendants for $1825, from which judgment this appeal is prosecuted.

*Opinion.*—The first assignment of error is made the basis of the proposition, that a recovery of a statutory penalty can not be had upon a petition which fails to set out or specifically refer to the statute creating the penalty.

Courts take judicial cognizance of general laws, and under our system of pleading it is only necessary to allege the facts upon which the recovery is sought. The provisions of general statutory law governing the rights of the parties upon such a state of fact need not be alleged. Stephens Plead., 347; Chit. Plead., 215; Gould's Plead., ch. 3, sec. 16; 23 Am. and Eng. Ency. of Law, 286-7.

The second, third, fourth, fifth and sixth assignments of error assail the validity of the Acts of the Legislature of 1879 and 1883 (Acts 1879, p. 116, and Acts 1883, p. 83), upon several grounds. The propositions urged under these assignments were decided adversely to appellants upon a former appeal in this case, and we do not feel disposed to question the correctness of that decision. Johnston v. Martin, Wise & Fitzhugh 75 Texas, 33.

The seventh, eighth and ninth assignments of error attack the eighth section of the Act of 1879, as being violative of both the State and Federal Constitutions. The eighth section of said Act is as follows: "Sec. 8. It shall not be lawful for any factor, commission merchant or any other person or persons to employ any one other than a regularly appointed and qualified public weigher, or his deputy, to weigh any cotton, wool, sugar or hides required to be weighed, sold or offered for sale in any city having a public weigher duly qualified; and any person or persons violating this provision shall be liable at the suit of the public weigher of such city, or either of such public weighers, to damages in any sum not less than five dollars for each bale of cotton, bale or sack of wool, hogshead or barrel of sugar or bale of hides so unlawfully weighed, to be recovered in any court of such county having jurisdiction thereof. . . . ."

It is contended that the failure to fix the maximum of the fine by express terms in the statute renders the same obnoxious to the eighth and fourteenth amendments to the Constitution of the United States, and to sections 13 and 19 of the Bill of Rights as contained in our State Constitution.

The provision referred to in the eighth amendment of the Constitution of the United States, has its origin in an Act of Parliament in 1688, entitled: "An Act declaring the rights and liberties of the subject, and settling the succession of the crown;" which Act sets forth numerous grievances, and among them, that "excessive bail hath been required of persons committed in criminal cases to elude the benefit of the laws made for the liberty of the subjects; and excessive fines have been imposed, and illegal and cruel punishments inflicted." And it is therein declared that excessive bail ought not to be required nor excessive fines im-

posed, nor cruel and unusual punishments inflicted. Statute 1 W. and M. c. 2. The declaration of rights as contained in this Act of Parliament relate to the executive and judicial departments of the government of England. The language as used in our Federal Constitution is a limitation upon the authority of Congress, and has no application whatever to the government of the States. In re Kemmler, 136 U. S., 446; 5 Wall., 475; 5 Howard, 410; 7 Peters, 243; 134 U. S., 31.

The exact language used in the amendment of the Federal Constitution, namely, "excessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted," is found in our State Constitution, art. 1, sec. 13, Bill of Rights. As used in our State Constitution, this provision was doubtless intended to relate specially to the legislature of the State and serve as a limitation on the exercise of its right to fix punishments for the violation of its laws. It is likewise binding upon the judicial department of the government, and may be invoked by the citizen in questioning the validity of a legislative enactment, or judgment of a court. It is a safeguard thrown around the citizen by the sovereign people in their preliminary declaration of individual rights, made by them a part of the organic law of the State government, and may not be disregarded by any branch of the government. Does the statute violate this provision? The contention is that the statute gives to the jury power to impose excessive fines, in that it fails to fix the maximum penalty which may be imposed, and for that reason the statute is violative of the Constitution.

At common law, the amount of the fine to be imposed for the commission of an offense frequently rests in the discretion of the court and jury. The fact that the statute does not fix the limit of punishment does not affect its validity. In Cooley on Constitutional Limitations, p. 401, it is said: "Within such bounds as may be prescribed by law, the question of what fine shall be imposed is one addressed to the discretion of the court; but it is a discretion to be judicially exercised, and there may be cases in which a punishment though not beyond any limit fixed by statute, is nevertheless so clearly excessive as to be erroneous in law."

Mr. Bishop in his own work in Criminal Law, Vol. 1, sec. 940, upon this subject, says: "The ordinary and appropriate common law punishment for misdemeanors, is fine and imprisonment, or either of them at the discretion of the court. It extends to all cases for which the law has not provided some other specific penalty. For example, if the statute forbids and condemns an act of a public nature, and is silent as to the punishment, the common law imposes for disobedience fine and imprisonment. A majority of the Connecticut court held that a fine must be for a limited sum, and not for all of the defendant's property; and imprisonment for a stated number of years, and not for life; but this distinction is doubtful as one of principle."

In the case of Bottom v. Commonwealth (Ky.), 32 S. W. Rep., 140, referring to a charge of the trial court, to the effect that if the jury

found the defendant guilty, they would fix his punishment at a fine "at any sum within your discretion; or at imprisonment in the county jail any length of time within your discretion, or both by fine and imprisonment, etc.," the court says, "these instructions seem to be in usual form, and the chief objections to them made by counsel in their argument are, first, that they give arbitrary power to the jury over the property and liberty of a citizen, in this, that they may punish in their discretion. This, we apprehend, is not well taken. This right and duty of the jury in fixing the punishment in accordance with their discretion in the trial of common law offenses, has never been questioned, and is as old as the common law itself and is made a part of it, and has always been the uniform practice in Kentucky."

Mr. Cooley, in his work on Constitutional Limitations, p. 402, further says: "It is certainly difficult to determine precisely what is meant by cruel and unusual punishment. Probably any punishment declared by statute for an offense which was punishable in the same way at common law could not be regarded as cruel or unusual in the constitutional sense; and probably any new statutory offense may be punished to the extent and in the mode permitted by the common law for offenses of a similar nature. But those degrading punishments which in any State had become obsolete before its existing constitution was adopted, we think may well be held forbidden by it as cruel and unusual."

Is it a fair construction of the statute of our State to say, that because it fails to fix a limit to which the penalty may be inflicted, the jury is thereby warranted in imposing an excessive penalty? Is it presumable that the Legislature intended to authorize juries to do that which is inhibited by the constitution? Unless the clear language of the statute requires such a construction, we should give to it that meaning which would harmonize the legislative intent with the organic law of the State which reigns supreme over every department of government and citizen of the State. Under this rule to guide us, we can not come to the conclusion that the statute authorizes an excessive penalty to be assessed by the jury. It fixes the minimum penalty, and leaves the jury a discretion to go beyond it; but this discretion must be exercised in reason and justice and in subordination to the constitutional provision here invoked.

The fourteenth amendment to the Constitution of the United States provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny any person within its jurisdiction the equal protection of the laws."

Section 19 of the Bill of Rights is to the same effect, and in this language: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except

by the due course of the law of the land." Neither of these provisions are in any sense violated by the statute in question.

The propriety of legislative enactments in this form, under our system of laws, appears to us to be very questionable. It is quite easy to fix the maximum of fines and penalties in express terms of the statute, and the scope below the fixed maximum would seem to be a sufficient domain to be governed by the discretion of the jury. As, however, we find nothing in our constitution and laws prohibiting legislation in this form, and as we find that such statutes receive the sanction of the common law and are enforced by common law courts, the mere fact that such form of legislation is thought to be ill-advised furnishes no reason why, as a court, we should decline to enforce the statute. Again, this statute has been twice reviewed by our Supreme Court, and while this particular question was not brought before the court for adjudication or decision, the statute was treated by the court as a valid statute. Watts v. State, 61 Texas, 184; Johnston v. Martin, Wise & Fitzhugh, 75 Texas, 33. The assignment of error can not be sustained.

The tenth assignment urges that the petition of plaintiff seeks to recover for more than one penalty up to the time of bringing the suit, and that the special exception directed at that feature of the petition should have been sustained.

The very terms of the statute under which the cause of action arises, and the liability is claimed, clearly indicates that such a suit may be maintained under it. The assignment is without merit.

The eleventh, twelfth and thirteenth assignments are not well taken, and it is not deemed important to discuss them.

Under the fourteenth and twenty-second assignments, based upon the ruling of the court upon special exceptions to the pleadings, and the refusal of a special charge requested, the proposition is urged, that the defendants Martin, Wise & Fitzhugh and Johnson & Long bought the cotton from producers or other owners, and the vendors, at the instance of the purchasers, carried the cotton to the warehouse company to be weighed, and the warehouse company, under previous arrangements with the defendant purchasers, weighed the cotton, and that no liability exists against the defendants therefor.

The Act of 1879 (Acts 16th Leg., p. 116) creates the office of public weigher, provides for his appointment, qualifications, duties, etc., and the seventh and eighth sections of the Act are as follows:

"Sec. 7. It shall not be lawful for any person other than a regularly appointed weigher, or his deputy, to weigh any cotton, wool, sugar or hides required to be weighed, sold or offered for sale in any city having a public weigher duly qualified. Any person or persons so offending shall be deemed guilty of a misdemeanor, and upon conviction before any court of competent jurisdiction, shall suffer a fine of five dollars for each and every bale of cotton, bale or sack of wool, hogshead or barrel of sugar, bale or loose hide so weighed.

"Sec. 8. It shall not be lawful for any factor, commission merchant

or any other person or persons to employ any one other than a regularly appointed and qualified public weigher, or his deputy, to weigh any cotton, wool, sugar or hides required to be weighed, sold or offered for sale in any city having a public weigher duly qualified; and any person or persons violating this provision shall be liable at the suit of the public weigher of such city, or either of such public weighers, to damages in any sum not less than five dollars for each bale of cotton, bale or sack of wool, hogshead or barrel of sugar, or bale of hides so unlawfully weighed, to be recovered in any court of such county having jurisdiction thereof; provided, any owner shipping any produce named in this act to any town or city having a public weigher may by written instructions authorize his factor, commission merchant or agent to have such produce weighed by private weighers, if he prefers so to do, and in all such cases the prohibitions and penalties embraced in this section and in the preceding section shall not apply."

This act makes it unlawful for any factor, commission merchant or any other person other than the public weigher in the city or town having a public weigher, to weigh or employ any one other than the public weigher, or his deputy, to weigh cotton, wool, hides or sugar, except under certain named conditions, to-wit, "provided, any owner shipping any produce named in this act to any town or city having a public weigher, may by written instructions, authorize his factor, commission merchant or agent to have such produce weighed by private weighers, if he prefers so to do, and in all such cases the prohibitions and penalties embraced in this section and in the preceding section shall not apply."

In the case of Watts v. State, supra, the cause arising under the Act of 1879, as amended by the Act of 1883, our Supreme Court held that any person may lawfully pursue the business of private weigher of cotton, etc., and solicit business in a town or city having a public weigher. Upon that point, it is said: "The law then permits private parties to weigh cotton shipped to a city, under certain circumstances, forbidding it if these do not exist. The appellants if requested by the factor, who exhibited the written instructions to that effect from the owner, were authorized to weigh the produce covered by such instructions, and as to it, their powers were as great as those of the relator (public weigher) himself. This being the case, we can see no reason why they should not be allowed to pursue the occupation of private cotton weighers, solicit business of the kind they were allowed to receive, and make the necessary preparations to comply with a legal request for their services in that respect, their business being confined to private cases in which private weighing was allowable. There would certainly be no illegality in their soliciting owners, in person or by letter, for such employment, or in seeking it from factors who had received the necessary written instructions. The form or manner of the solicitation could not be a matter of importance, and we therefore see no impropriety in their holding themselves out to the world as persons willing to do an act which the law expressly authorizes them to do."

Under authority of this case, the Lamar Warehouse Company should be treated as having the right to solicit and engage in the business of weighing cotton. As a corporation, it could only act through its servants and agents, and it had the right to employ whom it pleased to transact its business in a legal manner. Under the strict terms of the Act of 1879, no one other than the public weigher, or his deputy, was authorized to do such weighing, except upon the written authority of the owner who had shipped the produce to such city or town to a factor, commission merchant or agent.

Whether that act should receive the construction, of taking away from the owner, under all other conditions, the right to control and direct as to who should weigh his produce, to say the least of it, is very questionable. But it is unnecessary for us to pass upon that point in this case.

In 1883, the Legislature passed an act amending the law of 1879. This amendatory act purports to amend only sections 1, 2 and 9 of the Act of 1879, leaving sections 7 and 8 to stand as passed in 1879. In amending section 1, which originally provided for and regulated the appointment of public weighers, the Act of 1883 provided for and regulated their election, and added this new matter to the section: "Provided nothing herein contained shall be construed so as to prevent any other person from weighing cotton, wool or hides when requested so to do by the owner or owners thereof." The two enactments are now to be regarded as one law, and we have section 1 declaring that "nothing herein contained shall be construed so as to prevent any other person from weighing cotton, wool or hides, when requested so to do by the owner or owners thereof"; while sections 7 and 8 broadly prohibit any other person from weighing or employing any other person than a public weigher, under this limitation—"provided, any owner shipping any produce named in this act to any town or city having a public weigher, may by written instructions, authorize his factor, commission merchant or agent, to have his produce weighed by private weighers, if he prefers so to do, and in all such cases the prohibitions and penalties embraced in this section and the preceding section shall not apply." Does the statute as it now stands, place any limitation upon the right of the owner to control in the matter of the weighing of his produce when he is present and acts for himself? It will be seen that the express terms of the Act of 1879 provided for but one contingency in which it was lawful for private persons to weigh, or employ private weighers to weigh such produce, namely, when the owner had shipped the cotton to a factor, commission merchant or agent, and given written instructions authorizing it to be weighed by private weighers.

Under the letter of this provision, an owner present upon the ground controlling his produce, could not have it weighed by a private weigher; and a private weigher acting upon his request, either verbal or written, would not be protected. The provision only applies to a case where the produce is handled by a factor, commission merchant or agent, for the real owner. Are the rights of the owner so restricted by the Act as

amended?  In the Watts case, above cited, Chief Justice Willie says: "For the purposes of this case, it is not essential for us to decide whether the amendment of the first section of this statute by the Act of 1883 changed the law in this respect or not.  It certainly does not interfere with the right of the owner of produce to have it weighed by private weighers; but if it has any effect, it allows that to be done by direct request of such owner, without the intervention of the factor or commission merchant.  We do not now pass upon that question, as it is unnecessary for a decision of this appeal."

We are of opinion that the amendment has the effect which seems to be intimated by the learned Chief Justice.  It removes the restrictions apparently placed upon the power of the owner over his own property, and makes it lawful for private weighers to weigh his produce at his instance.  A factor, commission merchant or agent to whom he might ship his produce can not lawfully have it weighed by a private weigher, except upon written instructions from the owner; but where the owner acts for himself in having the produce weighed, the statute does not limit the exercise of his right to select the weigher, nor the right of the person selected by him to do the weighing.  The object of the act is clearly the protection of the owners of produce from false weights and from the fraudulent conduct of their factors or agents in rendering false accounts of such weights of produce.  The statute should be so construed as to accomplish this object; but it should not be given such a range as to interfere with the complete dominion of the owner over his property.

Applying these principles to the case before us, if Martin, Wise & Fitzhugh and Johnson & Long, defendants, purchased the cotton from the owners, agreeing to pay therefor certain prices upon receipt of the weights, gave them tickets addressed to the Warehouse Company requesting it to weigh cotton for their account, and the vendors of the cotton carried the cotton to the Warehouse Company to be weighed, presenting such written requests, and the Warehouse Company weighed the cotton, then the cotton was weighed upon the requests of the owners thereof, and no liability was incurred by the defendants.

The case was not presented in this light in the court below, and its judgment must be reversed.  It is not clear from the pleadings of plaintiff that the cotton was weighed under circumstances that rendered any of the defendants liable in damages to the public weigher, and the court below should have sustained the thirteenth special exception urged upon that point.

There are many other assignments of error presented, which we deem it unnecessary to consider.  On account of the errors indicated, in ruling upon exceptions and instructions to the jury, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 16, 1895.

LIGHTFOOT, Chief Justice, did not sit in this case.