H. C. DeVORE.

Habeas Corpus.

### SYLLABUS (BY THE COURT)

1. Common law crimes are recognized and punished in New Mexico, by virtue of sec. 3422, C. L. 1897, which provides, "In criminal cases, the common law as recognized by the United States and the several states of the Union shall be the rule of practice and decision."

P. 258

2. The word "recognize," used in the above section, is given various significations by the lexicographers. Webster, among other definitions, defines its meaning to be "to avow knowledge of." Century Dictionary, "to know again." Webster defines the meaning of the verb "know" to be, among others given, "to recognize." In the above section the word "recognized" was used in the sense of "known," and as used was intended to adopt the common law of crimes, as known in the United States and the several states of the Union, which was the common law, or lex non scripta of England, as it existed at the time of the Independence of the United States, supplemented and modified by such British statutes as were of a general nature and not local to that kingdom.

P. 256

3. Penal statutes are to be strictly construed, but are not

to be subjected to a strained or unnatural construction in order to work exemptions from their penalties. Such statutes are to be interpreted by the aid of the ordinary rules for the construction of statutes, and with the cardinal object of ascertaining the legislative intention.

P. 254

4. Where a statute does not specifically repeal or cover the whole ground occupied by the common law, it repeals it only when, and so far as directly and irreconciliably opposed in terms.

P. 259

5. Where a party is confined in prison, the legality of the imprisonment does not rest upon the mittimus, but upon the judgment, and a prisoner who has been legally and properly sentenced to prison can not obtain his discharge simply because there is an imperfection, or error, in the mittimus.

P 259

6. While common law crimes are recognized and punished in this state, common law penalties are not inflicted, but the punishment therefor is prescribed by sec. 1054, C. L. 1897.

P. 261

7. Where petitioner, in his application for the writ of habeas corpus, sets forth certain grounds for his discharge, which his counsel fail to discuss in their brief, or upon the argument of the case, the court assume that such points are waived and will not consider the same.

P. 262

Original proceedings in the Supreme Court before Roberts, C. J., Parker and Hanna, Justices; writ of habeas corpus discharged.

RENEHAN & WRIGHT, Santa Fe, New Mexico, for petitioner.

Ex Parte DeVore, 18 N. M. 246.

Statutes involved herein.  C. L. 1897, secs, 1054, 1055, 2871.

In all the courts in this Territory the common law as recognized in the United States of America, shall be the rule of practice and decision.  Leitsendorfer v. Webb, 1 N. M. 34; Montoya v. Donahoe, 2 N. M. 214; Terr. v. Maxwell, 2 N. M. 250; C. L. 1897, sec. 3422.

Statutes adopting the common law.  8 Cyc. 373;
    Kansas, C. L. 1879, sec. 6190;
    Colorado, Mills Ann. Stats., sec. 4184;
        Chilcott v. Hart, 45 Pac. 391; Herr v. Johnson, 11 Colo. 393;
    Alabama, Ordinances of 1787, art. 2;
        State v. Caywood, 2 Stew. 360;
        Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374;
        Ferguson v. Selma, 43 Ala. 400;
    Nevada, General Statutes, sec. 3021;
        Reno Smelt. Works v. Stevenson, 20 Nev. 269; 19 Am. St. 19;
        Van Sickle v. Haines, 7 Nev. 249;
    South Carolina, General Statutes, sec. 2738;
        Edwards v. Charlotte Ry. Co., 39 S. C. 472, 39 Am. St. 746;
    Nebraska, Cobbey's Ann. Stat. 1903, sec. 6950;
        Kinkead v. Turgeoon, 109 N. W. 744, 7 L. R. A. (N. S.) 316;
    Indiana, Rev. Stat. 1881, sec. 2356;
        Sopher v. State, 169 Ind. 177, 14 Ann. Cas. 27;
    Texas, Revised Statutes, art. 3258;
        Swayne v. Oil Co., 98 Tex. 597, 8 Ann. Cas. 1117.
Excess of jurisdiction; review by habeas corpus.  1 Bailey on Habeas Corpus, ch. 5.

There are no common law crimes of the United States. Benson v. McMahon, 127 U. S. 466; 8 Cyc. 385; 6 A. & E. Enc. L., 289, and cases cited; McKennon v. Winn, 1 Okla. 327, 22 L. R. A. 501 and case notes.

In the United States courts the common law is merely a source of definition.  8 Cyc. 386; U. S. v. Palmer, 3 Wheat. 610; In re Green, 52 Fed. 104; U. S. v. Hudson,

Ex Parte DeVore, 18 N. M. 246.

7 Cranch. 32; U. S. v. Coolidge, 1 Wheat. 415; U. S. v. Brittain, 108 U. S. 199-206.

There is absolutely no uniformity as between the states of this Union in their recognition of what constitutes the common law. Herr v. Johnson, 11 Colo. 393; Watson v. State, 116 Ga. 607, 21 L. R. A. (N. S.) 1, and case note.

There are only two decisions of our own court construing sec. 3422: Borrego v. Territory, 8 N. M. 460; Territory v. Herrera, 11 N. M. 143.

All other prison breaches were misdemeanors. Randall v. State, 22 Atl. 46, 43 N. J. L. 488; New Jersey Gen. Stat., sec. 12, Crimes.

Statutes defining crimes in this State. C. L. 1897, secs. 1041, 1042, 1043, 1044 and 3422.

Burglary not being punishable by death, prison breach, (if the common law crime is in force in New Mexico), is merely a misdemeanor, and as such punishable under the provisions of sec. 1055, C. L. 1897. Randall v. State, 22 Atl. 46; Weaver v. Commonwealth, 29 Pa. St. 445.

General discussion of the crimes of prison breach, rescue and escape. 2 Bishop New Crim. Law, chap. 35.

Sentence imposed is in violation of the State Constitution. Const., art. II, sec. 13; 12 Cyc. 963; Southern Express Co. v. Commonwealth, 41 L. R. A. 436; Bailey on Habeas Corpus, vol. 1, sec. 54, et seq.

Section 1054, C. L. 1897, is of doubtful validity.

(Additional Authorities.)

What constitutes cruel and unusual punishment. Terr. v. Ketchum, 10 N. M. 721; Weems v. U. S., 217 U. S. 349, 19 Ann. Cas. 705, and note.

Cases construing statutes similar to sec. 1054, C. L. 1897. Frese v. State, 23 Fla. 267, 2 So. 1; In re Yell, 107 Mich. 228, 65 N. W. 97; Martin v. Johnson, 11 Tex. Civ. App. 628, 33 S. W. 306; Latshaw v. State, 156 Ind. 194, 59 N. E. 471; State v. Williams, 77 Mo. 310.


Argument on Behalf of State.

FRANK W. CLANCY, Attorney General, Santa Fe, N. M.

Construction of statutes. C. L. (1897) 2871 and 3422, 1054.

Common law in force. Browning v. Browning, 3 N. M. 659-675.

No conflict between section 1043, C. L. 1897, and other sections under consideration.

Chapter 6, Laws 1880, held to refer to criminal, as well as civil cases, the same as sections 2985 to 2989, also section 2990, and 2994 to 2998.

Prison breach is either a felony or a misdemeanor, according as the imprisonment was for a crime of the one grade or the other. 2 Bishop Crim. Law, sec. 1070.

No argument in the brief has presented any doubt upon the validity of sec. 1054, C. L. 1897. Johnson v. People, 22 Ill. 314-316.

## Memorandum Brief in Reply.

RENEHAN & WRIGHT, Santa Fe, N. M., for petitioner.

Sec. 1054, C. L. 1897, passed in February, 1872, cannot be construed as fixing penalties for common law crimes because passed four years before sec. 2871, C. L. 1897, which adopted common law crimes in New Mexico. Therefore, common law crimes did not exist prior to the passage of sec. 2871.

Section 2871, C. L. 1897, fixes the measure of recognition, that the common law as recognized in the United States of America, shall be the rule of practice and decision.

Section 2871, C. L. 1897, is no more effective to adopt the common law crimes as part of the criminal law of New Mexico, than is sec. 3422 of the Compiled Laws.

When sec. 2871, C. L. 1897, is construed in the light of the definitions contained in sec. 1041 to 1044, there can be but one conclusion; and that is that common law crimes are not adopted as part of the criminal law of New Mexico by either secs. 1054 or 2871.

Ex Parte DeVore, 18 N. M. 246.

## OPINION OF THE COURT.

ROBERTS, C. J.—This is an original application for the writ of habeas corpus by H. C. DeVore, who pleaded guilty to an indictment returned against him by the grand jury of Otero County, on the 29th day of October, 1912, charging him with the offense of "prison breach," upon which plea of guilty he was sentenced by the District Court to serve a term in the state penitentiary of not less than ten, nor more than twelve years. He bases his right to the writ upon the following grounds.

(1) Prison breach is not a statutory offense in New Mexico and the common law of crimes is not in force in this state. (2) Admitting the common law of crimes to be in force in New Mexico, the punishment inflicted was not authorized under such law. (3) The sentence imposed is violative of section 13, art. XI, of the State Constitution.

It is admitted by the Attorney General that there is no statute in New Mexico, defining the crime of prison breach and providing punishment therefor. Counsel for petitioner and the State agree that petitioner was indicted and sentenced for a common law offense and it necessarily follows that if the common law of crimes is not in force in this State the petitioner is unlawfully restrained of his liberty, as the District Court would have no jurisdiction of such an offense. The initial question, therefore, to be determined is whether or not the common law of crimes is in force in this state. It is conceded, that if such law was in force prior to the adoption of the Constitution, it was carried forward by the Constitution as the law of the State.

New Mexico was acquired by the United States from Mexico by the Treaty of Guadalupe Hidalgo, February 2, 1848. The common law was not recognized by Mexico, and had no place in the jurisprudence of New Mexico prior to its cession to the United States. Consequently, it would require a specific enactment, by Congress, or the Territorial legislature, to adopt the common law. It is not claimed that Congress so legislated, but the Attorney

Ex Parte DeVore, 18 N. M. 246.

General does contend that the Territorial legislature, in 1851, by sec. 18 of an act entitled "An act, regulating the practice in the District and Supreme Courts of the Territory of New Mexico," made the common law of England the rule of practice and decision in criminal cases. The section, which is incorporated into C. L. 1897, as section 3422, reads as follows:

"In criminal cases, the common law as recognized by the United States and the several States of the Union, shall be the rule of practice and decision."

On behalf of the petitioner it is urged that this statute was ineffectual to adopt the common law, as a part of our criminal jurisprudence, because, in the United States courts, common law crimes are, and were, not punishable, and such law is, in such courts, merely a source of definition; and further, that at the time of the enactment of the above section, the common law of crimes was not universally recognized by the several States of the Union. As remarkable as it may appear, the effect of the statute has never before been presented squarely to the Supreme Court of the Territory or State.

In the case of Territory v. Waller, 2 N. M. 470, the section was referred to by Chief Justice Axtell, but its scope was not discussed. In the case of Borrego v. Territory, 8 N. M. 446, the Court quoted the section, and said:

"By providing that the common law, as recognized by the United States and the several States of the Union, should be the rule of practice and decision in the Territory, the legislature has vested the Supreme Court with jurisdiction to review judgments in criminal cases, by writ of error."

And later, in the case of Territory v. Herera, 11 N. M. 129, the Territorial Supreme Court again referred to this section and held that under its provisions, the common law rule, which it evidently considered to have been adopted thereby, required the Court, in a capital case, before pronouncing sentence upon the defendant to ask him "if he had anything to say why sentence should not be pronounced" in the absence of a statute dispensing there-

with. In the case of Territory v. Montoya, decided by the State Supreme Court, and reported in 125 Pac. 622,. Mr. Justice Hanna, speaking for the Court, says:

"The common law of crimes is in force in New Mexico, except where it may have been repealed or modified by statute."

But it will be noted that the question was not directly involved in the case, and, therefore, the language may be considered *obiter dictum*.

It is interesting to note that in each of the above cases the Court seemingly treated the above statute as having adopted the common law of crimes in New Mexico, without question. The cases cannot be considered controlling authority, however, because the question was not directly involved, as, in none of the cases was the defendant being prosecuted for a common law crime. It is, therefore, the duty of this Court to determine, as an original proposition, the question of the effect of the statute.

Counsel for petitioner admits that it was the intention of the legislature, by the adoption of the section in question, to incorporate into the Territorial law common law crimes, but insists that the language employed will not permit the Court to give effect to such intention. If it be true, that the legislature so intended, and certainly no other purpose is apparent, then it is the duty of the Court to give effect to such intention, if it can be done without unreasonably perverting the language employed. The difficulty is occasioned by the words used, viz., "recognized by," for the United States has never recognized the common law of England, if by that term is meant "adopted" or "applied" as a rule of decision. As stated, there is no common law of the United States; the common law is merely a source of definition. (8 Cyc. 386; U. S. v. Palmer, 3 Wheat. 610; U. S. v. Hudson, 7 Cranch 32; U. S. v. Britton, 108 U. S. 199.)

Prior to 1848, New Mexico, as heretofore observed, was a part of the Republic of Mexico, and subject to the laws of that country, and such laws were of course retained in the Territory, except insofar as modified by the laws of the

United States or the Territory. In Mexico the common law
was unknown and it is hardly to be presumed that the leg-
islature of New Mexico would intend to make the common
law the source of definition for a system of laws, in no
wise related to the common law. Having become a part
of an Anglo-Saxon nation, it is evident the law-making
power was attempting to conform the criminal laws of the
Territory to the customs and institutions of that race of
people, and so attempted to adopt the common law,
insofar as it applied to public wrongs. Penal statutes
are of course to be strictly construed, but they are not
to be subjected to any strained or unnatural construction
in order to work exemptions from their penalties. Such
statutes must be interpreted by the aid of the ordinary
rules for the construction of statutes, and with the cardi-
nal object of ascertaining the intention of the legislature
36 Cyc. 1183. In the case of U. S. v. Winn, Fed. Cas.
No. 16, 740, Mr. Justice Story says:

"And where a word is used in a statute, which has vari-
ous known significations, I know of no rule, that requires
the Court to adopt one in preference to another, simply
because it is more restrained, if the objects of the stat-
utes equally apply to the largest and broadest sense of the
word. In short, it appears to me, that the proper course
in all these cases, is to search out and follow the true in-
tent of the legislature, and to adopt that sense of the
words which harmonizes best with the context, and pro-
motes in the fullest manner the apparent policy and objects
of the legislature."

And the rule, relative to construction of criminal stat-
utes, is thus stated by the Supreme Court of Massachusetts,
in the case of Commonwealth v. Loring, 8 Pick. 370:

"But it is said that penal statutes admit of no latitude
of construction; that they are to be taken strictly, word
for word, let the consequences be what they may. It is
true, it is so laid down as a general rule, and the reason
is, that the Court shall not be allowed to make that an of-
fence which is not so made by the legislative enactment.
But the rule does not exclude the application of common

sense to the terms made use of in an act, in order to avoid an absurdity which the legislature ought not to be presumed to have intended. There are cases which show this, although precedents should not be required to sustain so reasonable a doctrine."

The fundamental rule in the construction of a statute is to ascertain and give effect to the intention of the legislature. The intention, of course, must be the intention expressed in the statute, and where the meaning of the language employed is plain, it must be given effect. But where the language of a statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, absurdity or contradictions, the duty devolves upon the Court of ascertaining the true meaning. 36 Cyc. 1106. And it is a well settled rule, in the construction of a statute, that the spirit or reason of the law will prevail over its letter, especially where the literal meaning is absurd, 36 Cyc. 1108, and words may be rejected and others substituted. James v. United States Fidelity and Guarantee Co., (Ky.) 117 S. W. 411. In dealing with this subject, Mr. Endlich, in his work on interpretation of statutes, page 400, sec. 295, says:

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship, or injustice presumably not intended, a construction may be put upon it which modifies the meaning of the words and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words, sometimes by altering their collocation, or by interpolating other words, under the influence, no doubt, of an irresistible conviction that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give true intention."

The word "recognize" is given various significations by the lexicographers. Webster, among other definitions, defines its meaning to be, "to avow knowledge of." One

definition, found in Century Dictionary, is "to know again," a definition, given the verb "know," by Webster, is "to recognize." The word could not have been used in the sense of "adopted" or "practiced," for, as already shown, the United States did not adopt the common law. The United States courts "recognized" it only in the sense that it was "known" to such courts. The common law was known in the "United States and the various States of the Union," but was not adopted as the rule of practice and decision in the United States, nor all of the States. The common law of crimes, as known in the United States and the various States of the Union, was of course the *lex non scripta* of England, as it existed at the time of the Independence of the United States, supplemented and modified by such British statutes as were of a general nature and not local to that kingdom. And where adopted by any State, only such parts were carried into the body of the law as were applicable to the conditions of the adopting State, and not in conflict with its Constitution and laws. While the common law of crimes was not the rule of practice and decision in many of the States, in 1851, when this statute was enacted, still it was recognized by the United States and all the States, if the term be used in the sense of "known," for all the Courts, both National and State, were necessarily familiar with the common law. If we ascribe to the word "recognized" the meaning of "known," the question of the proper construction of the statute and its effect is easy of solution. This, we think, may properly be done, without going to the extreme sanctioned by many of the courts in the construction of statutes, in order to give effect to the legislative intent.

That this is the proper construction of the section we think is made more manifest by a resort to the history of the time when this law was enacted and its passage through the legislature. At the time of the acquisition of New Mexico, its people used the Spanish language exclusively, and very little English was spoken. Three years thereafter, when this section was enacted, the house of repre-

sentatives was composed of nineteen native citizens of the Territory, and but six English-speaking representatives, while the council was máde up of ten native citizens and two Anglo-Americans. Every act introduced was necessarily translated into either English or Spanish, according to the language in which it was originally drawn. The act, of which this section was a part, was originally introduced in the English language, in its present form. It was translated into the Spanish prior to its enactment as follows:

"En causas criminales la ley comun conocida en los Estados, y los varios Estados de la Union, sera la regla para la practica y la decision."

The word used in the Spanish translation, to express the meaning of the word "recognized," in the original English bill, it will be noted was "conocida," which means "known." The correct word, which should have been employed to express the same meaning in Spanish would more properly have been "reconocida," nevertheless, the word used, "conocida," meaning "known," shows clearly the legislative intent to adopt the common law as known in the United States and the various States of the Union, and would warrant the construction which we have placed upon the act.

In the case of Douglas v. Lewis, 3 N. M. 596, Justice Henderson, speaking for the Territorial Supreme Court, says:

"This statute was enacted in 1853. We are warranted in looking back at that period to ascertain the surroundings of the legislature, the language in which the act was passed, the difficulty and improbability of a verbally correct translation into English, and determine by these and other considerations what was meant by the use of words and somewhat obscure phrases employed in the section as it now appears in the statutes of the Territory." See also 36 Cyc. 1117.

If the above statement of the rule is correct, we may properly consult the Spanish translation of the act, and profit by such light as it may shed upon the meaning of

the language used, where ambiguous and uncertain words have been employed to express the legislative intent, where it appears that such translation was made before the enactment of the statute and was before the legislature during the consideration of the measure. Of course the Court must necessarily be governed by the language of the original act, and is not authorized to look to the language employed in the translated bill or act and base its decision thereon, (sec. 3800, C. L. 1897), but certainly it is warranted in resorting to all legitimate facts and circumstances which will aid it in arriving at the true meaning of words of doubtful import found therein.

If we have correctly interpreted the section, it necessarily follows that the Territorial legislature adopted the common law as the rule of practice and decision in criminal cases, thereby incorporating into the body of our law the common law, *lex non scripta* of England, and such British statutes of a general nature not local to that kingdom, nor in conflict with the Constitution or laws of the United States, nor of this Territory, which were applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country. That this was the effect of the statute is settled by repeated decisions of the Territorial Supreme Court and the State Court, in construing section 2871, C. L. 1897, which provides:

"In all the courts in this Territory the common law as recognized in the United States of America, shall be the rule of practice and decision."

It was urged in this case by the Attorney General, that, even admitting that sec. 3422 was invalid and ineffectual, the common law of crimes was adopted by the section just quoted, as the language therein employed was sufficiently broad and comprehensive to effectuate such result. The point is seemingly well taken, (State v. Pulle et al., 12 Minn. 164.) But we need not discuss it, in view of our conclusion that the prior section did so.

It was suggested, by counsel for the petitioner, upon the argument of this case, that as the legislature of 1854 en-

Ex Parte DeVore, 18 N. M. 246.

acted a somewhat comprehensive code of criminal laws, it must be presumed that it intended to abrogate common law crimes. It is not contended that the code, so enacted, specifically repealed sec. 3422, supra, or that it covered the whole ground occupied by the common law, and it is well settled that where a statute does not specifically repeal or cover the whole ground occupied by the common law, it repeals it only when, and so far as directly and irreconciliably opposed in terms. State v. Pulle, et al., supra.

Petitioner contends that he is imprisoned for "escape" and not for "prison breach;" that "escape" at common law was a misdemeanor, and that the Court must look to the common law and be guided by it in determining the sentence to be imposed.

It is true the mittimus delivered to the warden of the penitentiary recites that petitioner was convicted of the crime of "Escape from jail," but the legality of the imprisonment does not rest upon the mittimus, but upon the judgment, (Sennott's case, 146 Mass. 489) and a prisoner who has been legally and properly sentenced to prison can not obtain his discharge simply because there is an imperfection, or error, in the mittimus. (People ex rel. Trainor v. Baker, 89 N. Y. 461.) Upon an examination of the indictment in this case, we find the charging part, (omitting unimportant portions of the indictment), as follows:—

"Did then and there, the time and place aforesaid, wilfully and feloniously, from and out of said common jail, as aforesaid of Otero County, New Mexico, aforesaid, located at Alamogordo, Otero County, New Mexico, as aforesaid, *break out,* escape and go at large, etc."

It will thus be seen that the atttempt was made to charge petitioner with prison breach, rather than escape, for, an essential element of prison breach, lacking in escape, is, that there must be a breaking, and petitioner is charged with the breaking. The judgment recites that the defendant entered a plea of guilty to the charge contained in the indictment, which is followed by the sentence of the court, all showing clearly and unmistakably

that petitioner was sentenced for the offense charged against him in the indictment.

At the time of the breach, petitioner was in jail under a charge of burglary, as shown in the indictment. Burglary, under our statutes, is a felony. Bishop's New Criminal Law, 8th Ed., sec. 1076, in discussing the common law crime of prison breach, quotes with approval the following excerpt from Gabbett's Criminal Law:

"Breach of prison, or even the conspiracy to break it, was felony at the common law for whatever cause, criminal or civil, the party was lawfully imprisoned; but the severity of the common law was mitigated by the statute *De Frangentibus Prisonam,* 1 Edw. 2, st. 2. So that to break prison and escape, when lawfully committed for any treason or felony, remains still felony at common law; and to break prison when lawfully confined on any inferior charge was, by this statute, punishable only as a high misdemeanor, by fine and imprisonment."

From the known eminence and ability of the author, we conclude, without further research that the above statement of the law is correct. When petitioner broke and escaped from jail, he was confined therein on a felony charge and the breach was, therefore, a felony, and punishable as such. The common law punishment for the crime need not be looked to further than to determine the grade of the offense, for by sec. 1042, C. L. 1897, "Crimes and public offenses are divided into: First, Felonies; and second, Misdemeanors," and the next succeeding section defines a felony to be: "A felony is a public offense punishable with death, or which is, or in the discretion of the court, may be punishable by imprisonment in the penitentiary or Territorial prison; or any other public offense which is, or may be, expressly declared by law to be a felony."

This statute was enacted in 1854 and under its terms the crime for which petitioner was convicted would be a felony, because at the time of the breach he was lawfully

imprisoned on a felony charge, punishable by imprisonment in the state penitentiary. But it is contended that the Court had no power or authority to impose a sentence of from ten to twelve years upon petitioner, because at common law all felonies were punishable by death. It is not necessary to review or determine the question suggested, because in this State the common law penalties are not recognized or imposed. Section 1054, C. L. 1897, reads as follows:

"When a criminal is found guilty in the District Courts of this Territory of any felony, for which no punishment has been prescribed by law, the said criminal shall be punished by a fine of not less than fifty dollars, or by imprisonment in the Territorial prison for not less than three months, or both at the discretion of the court."

Petitioner contends, First, that this statute does not apply to common law offenses, but only to statutory crimes, for which no punishment has been prescribed, and, Second, that the section is of doubtful validity. Relative to the first proposition, it may be stated that counsel for petitioner has failed to point out any statute of the Territory or State which denominates an act a crime and fails to fix the punishment therefor. After a careful search, we have failed to find such a statute. It is to be presumed that the legislature had some object in view when it enacted the section, and, as we view it, the manifest purpose was to provide for the punishment of common law crimes. That the punishment imposed by the common law, for crimes and misdemeanors, in many instances, was excessive and not suited to our conditions and circumstances can not be doubted. Felonies under the common law of England, occasioned the forfeiture of lands and goods, but not so in the United States. The statute used the term "for which no punishment has been prescribed by law," and as employed in the section, refers to statutory law. Thus, where no statute of the State fixes the punishment for any crime, the Court is directed to impose the penalties provided by the act in question.

As used in this statute, the term "prescribed by law"

must be construed to mean prescribed by the statute law.

The validity of the section is so well settled by the adjudication of the courts, that the question need not be discussed. See, Frese v. State, 23 Fla. 267, 2 South 1; In re Yell, 107 Mich. 228, 65 N. W. 97; Martin v. Johnson, 11 Tex. Civ. App. 628, 33 S. W. 306; State v. Williams, 77 Mo. 310.

The third ground stated in the application for the writ is not discussed in the brief filed on behalf of the petitioner, nor was it upon the argument of the case, and it will not, therefore, be considered by the Court.

For the reasons stated the petitioner will be remanded to the custody of the warden of the State penitentiary, to be dealt with according to law, the writ of habeas corpus will be discharged, and it is so ordered.

SYLLABUS (BY THE COURT)

