JOHN A. FRESE, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The sale of spirituous liquor, without having a license as a dealer in spirituous liquors, is a misdemeanor, and a prosecution of the offence may be instituted "within two years next after" the commission of the offence, under the act of July 10th, 1832, page 435, McClellan's Digest.
2. A single sale of a spirituous liquor without having a license is a violation of the provisions of the Revenue Act of 1883, (chapter 3413.)
3. A statute which enacts that an offence shall be punished by fine, is not rendered unconstitutional by the fact that it does not prescribe the *maximum* amount of fine which may be imposed.

-4. The provision of section 12 of the Revenue Act of 1883, to the effect that any person convicted of carrying on a business for which a license is required, without having first obtained such a license, shall be punished by a fine of not less than double the amount required for the license, does not violate the Declaration of Rights, that "excessive fines shall not be imposed." The minimum fine prescribed for selling spirituous liquors without license is not excessive, nor is the omission to prescribe a maximum fine an imposition by the Legislature of an excessive fine.

:5. Courts take judicial notice of the meaning of the word "whiskey ;'' and it is not necessary to prove to them that it is a spirituous liquor.

Writ of Error to the Circuit Court for Hernando county.

The facts of the case are stated in the opinion.

*Barron Phillips* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

Mr. Justice Raney delivered the opinion of the court :

1. The plaintiff in error was convicted at the fall term, 1885, of the Hernando Circuit Court, of carrying on the business of a dealer in spirituous liquors without having obtained a State license.

It is contended that the offence is barred by the statute of limitations as it was not committed within one year before the filing of the information upon which the trial was had. The 78th section of the act of July 10th, 1832, (p. 435 of McClellan's Digest,) "an act relating to crimes and misdemeanors," provides that all offences not punishable with death shall be prosecuted within two years next after the same shall have been committed ; it is clear that there is no bar of the prosecution under this act; but counsel for plaintiff in error urges that the case is controlled by

section 18 of the act of November 19th, 1828, which, as it is set forth in the Digests of Thompson and McClellan, provides that "all actions, suits and presentments upon penal acts of the General Assembly shall be sued and presented within one year next after the offence committed."

This section as originally enacted and published (page 123, Territorial Acts of 1828,) provided "*that all prosecutions* (*felonies excepted*), all actions, suits, presentments upon penal acts of the Governor and Legislative Council, *and those of the United States*, shall be sued and prosecuted within one year next after the offence committed." The omission of the first words italicised was made by Judge Thompson, as he says, because as a limitation upon criminal prosecutions they were in conflict with the above section of the act of 1832. See note (d) to page 489 of Thompson's Digest. The case at bar is a criminal prosecution, not punishable with death, and the purpose and effect of the act of 1832 was a repeal of the act of 1828 as to all such prosecutions, and to extend the period within which they could be instituted to two years next after the commission of the offences. The act passed November 14, 1828, expressly repealed by the 79th section of the act of 1832, was a statute of upwards of a hundred sections, defining and punishing crimes and misdemeanors, and that passed November 17, 1829, expressly repealed by the 79th section, was an amendment to the act of November 14, 1828. The repeal of neither of these acts, so expressly repealed, would have been effected by the enactment of the 78th section of the act of 1832. The statutory bar of the prosecution before us is two years and not one year.

2. Another assignment of errors is that the Circuit Judge erred in charging the jury that one sale was sufficient to constitute a person a dealer in spirituous liquors.

under our statute. This was held, and we think correctly so, in Jordan vs. State, decided last year by this court. In the case before us there were two purchases of one quart of whiskey at defendant's store, at different times, the first quart being purchased directly from the defendant personally and two dollars being the price paid for it.

There was no error that we perceive in the proposition that selling through an agent by one without a liquor license is a violation of the statute; but even if there is, no advantage can be taken of it since the other proposition of the charge (that proof of one sale is sufficient to convict) was correct and the exception to the whole charge was general.

3. It is also contended that the 12th section of the revenue act of 1883, which makes a violation of the statute, in so far as it requires a liquor or other license, a misdemeanor, and declares that the punishment shall be a "fine of not *less* than double the amount required for such license," is unconstitutional in that it does not fix a *maximum* fine; the constitutional provision claimed to be violated is that section of the Bill of Rights which declares that excessive fines shall not be imposed (section 6 of Constitution of 1868 and section 8 of the present Constitution). The same provision against excessive fines is to be found in the English Bill of Rights, and we learn from Blackstone and other authorities that it was not necessary for a statute fixing the punishment of an offence by fine and imprisonment to do more than declare the general nature of the punishment, viz: by fine or imprisonment. The duration and quantity of each must, says Blackstone, frequently vary from the aggravations or otherwise of the offence, the quality and condition of the parties and from innumerable other circumstances, and "the *quantum* in particular of pecuniary fines neither can nor ought to be ascertained by an invaria-

ble law," and he says the statute law has not often, and the common law never, ascertained the quantity of fines. The Bill of Rights (which, according to Blackstone, was only declaratory of the old constitutional law of England), restrained or regulated, by the provision referred to, the discretion of the Judges in adjudging the quantity of the punishment.

Though in this State it is customary for either the *maximum* or the *minimum* and *maximum*, of fine or imprisonment with which an offence can be punished to be declared by statute, and the Judge is to fix the amount within such limit or limits, according as the particular circumstances of the offending may justify, yet we have no constitutional provision expressly providing that such limit or limits of fine shall be declared by statute, nor any, the effect of which is to make an omission by the legislative department to fix or prescribe the *maximum* quantity of fine fatal to a statute imposing a fine as the punishment of a misdemeanor. It is perfectly clear that the statute in question does not of itself violate our Bill of Rights by imposing an excessive fine for the commission of the offence of selling liquor without a license, unless it be that the *minimum* fine authorized by it be itself an excessive one for the offence denounced. The amount of $300 is the sum required for a State license, and counties and incorporated cities and towns each may impose further license taxes not to exceed fifty per cent. of the State tax. Not only is the sale of liquor thus regulated, but by another statute passed in 1883 no person can obtain license unless upon petition signed by a majority of the registered voters of the election district in which the place of business is to be located. The sale of liquor to any minor or to any persons in a state of intoxication is prohibited. Considering the character of the business, and the sentiment with which the legislation referred to shows it is regarded by the law

makers and the people, and the ease with which the unauthorized sale of liquor may be made successfully, we do not think the minimum penalty an excessive fine. This being so, and the act not prescribing a *maximum* fine, it cannot be said that it imposes an excessive one. The mere failure to fix the *maximum* of a fine is not the imposition of an excessive fine. In the absence of a statutory declaration of a *maximum* the courts are regulated or restrained by the same provision of the Bill of Rights that the citizen relies upon for protection against the infliction by them of excessive fines within the *maximum*, where such a *maximum* has been prescribed by statute. It cannot be denied that a fine imposed by a court upon a person may, upon the facts and circumstances of the particular case, be excessive though within the *maximum*. Though such a statute may be clearly free from the charge of unconstitutionality, yet it might be that a Judge in fixing or in approving or sustaining a fine fixed by a jury would err in the *quantum* of the fine inflicted; he may have gone too far above the *minimum*, where both a *minimum* and a maximum were specified, or too close to the *maximun* where only a *maximum* was presented by the statute. In such case the citizen's reliance for an enforcement of the provision of the Bill of Rights is upon the appellate courts, and upon the executive power to remit fines, commute punishment and to grant pardons. His reliance is the same where the statute merely prescribes the *minimum* fine. The statute in question, when judged by the well known rules governing in such cases and which require that there must be a clear antagonism to some constitutional provision, violates no provision of our Constitution. While we deprecate such legislation, and deem it better and more in accordance with well established custom, that at least the *maximum* of any possible fine should be fixed by the

Legislature, we can find no authority that makes it necessary. The following authorities sustain the conclusions reached above: 2 Blackstone's Commentaries, 377, 379; Tomlin's Law Dictionary, " Fines," p. 796 ; State vs. Danforth, 3 Conn., 112 ; Cooley's Const. Lims., 402, *et seq.* ; Parvear vs. Commonwealth, 5 Wallace, 475. The fact that the means once used in England for ascertaining the reasonableness of a fine are not used here does not change the rule as to the validity of the statute which permits the Judge or court to fix the *quantum* of the fine. The provisions of Magna Charta which saved to the landlord his *contenement* or land, to the trader his merchandise, and to the countryman his wainage or team and instruments of husbandry, seem to have somewhat of a counterpart in our homestead and exemption laws.

4. It is also urged that there was no proof that whiskey is a spirituous liquor. Mr. Bishop, in his work on Statutory Crimes, says courts know judicially that whiskey is a distilled liquor and that when an indictment mentions by name any liquor which the court judicially knows to be intoxicating it is sufficient under a statute using the term " intoxicating liquor." §1038, Bishop on Statutory Crimes. The dictionaries tell us that whiskey is a spirit distilled from grain, generally from barley, maize, wheat, rye, or from potatoes. It is a spirituous liquor, and every person of ordinary intelligence knows it just as he knows the meaning of any other ordinary word. It is not an uncommon word in the United States.

The judgment is affirmed.