STATE OF CONNECTICUT *v.* ROGER B. NELSON.
STATE OF CONNECTICUT *v.* WILLIAM A. GOODRICH.
STATE OF CONNECTICUT *v.* CLARA L. McTERNAN.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued January 4—decided March 6, 1940.

*William B. Fitzgerald,* state's attorney, for the appellant (the state).

*J. Warren Upson,* with whom was *William J. Secor, Jr.,* for the appellees (defendants).

*Frederick H. Wiggin, Huntington T. Day,* and *Laurence A. Janney* of the Massachusetts bar, filed a brief as amici curiae.

HINMAN, J. The allegations of the amended informations in the cases of the defendants Nelson and Goodrich are substantially identical. Each information charges in three counts that the defendant "a duly qualified and licensed physician, in violation of Sections 6246 and 6562 of the General Statutes, . . . assisted, abetted and counseled a married woman . . . to use a certain [specified] spermatocidal drug . . . and a [specified] contraceptive device . . . for the purpose of preventing conception for the reason that in the opinion of [the defendant] as a physician, the preservation of the general health of said married woman, who had sought his advice as a physician, required that she use said drug and device for the purpose of preventing conception" and "that thereafter the said married woman in consequence of said conduct of [the defendant] did in fact use said drug and contraceptive device for [that] purpose." Sections 6246 and 6562 of the General Statutes are printed in a foot-

note.[1] In the McTernan case the allegations of the three counts are similar to the foregoing except that it is alleged that the defendant is a trained nurse and that she, in assisting, abetting and counseling use of said drug and device "was carrying out the prescription of a duly qualified and licensed physician in whose professional opinion the preservation of the general health of [the] married woman, who had sought his advice as a physician, required that said married woman [so] use said drug and device." The grounds of demurrer are a general claim that § 6246 constitutes an interference with the individual liberty of citizens and a deprivation thereof without due process of law violative of the federal and state constitutions, and, specifically, because it applies where a married woman makes use of such drugs, articles or instruments for the purpose of preventing conception (a) upon the recommendation and advice of a physician; upon such advice (b) "under circumstances in which all physicians would agree that a pregnancy would jeopardize her life"; (c) "where, for health reasons, the use thereof is necessary for such purpose"; (d) "where such contraceptive measures are necessary to protect and procure the best possible state of health and well being"; also that the statute is unconstitutional if construed as being without an exception "protecting the right of any physician to prescribe drugs, medicinal articles or instruments for the purpose of preventing conception." Additional grounds are that § 6246

---

[1] Sec. 6246. USE OF DRUGS OR INSTRUMENTS TO PREVENT CONCEPTION. Any person who shall use any drug, medicinal article or instrument for the purpose of preventing conception shall be fined not less than fifty dollars or imprisoned not less than sixty days nor more than one year or be both fined and imprisoned.

Sec. 6562. ACCESSORIES. Any person who shall assist, abet, counsel, cause, hire or command another to commit any offense may be prosecuted and punished as if he were the principal offender.

fails to fix a reasonably precise standard of guilt and that it fails to fix a maximum fine. The Superior Court held that the statute could not be construed as affording the above-mentioned exception as to physicians and that it was consequently unconstitutional.

There is no ambiguity in the statutes here involved. Section 6246 makes it an offense for any person to "use any drug, medicinal article or instrument" for the proscribed purpose, and under § 6562 "any person who shall assist, abet, [or] counsel . . . another to commit any offense may be prosecuted and punished as if he were the principal offender." The defendants claim, notwithstanding, that these sections may and should be so construed as "not to prohibit a duly licensed physician from prescribing the use of contraceptive devices to a married woman . . . when the general health and well being of the patient necessitates it." A cardinal rule is that statutory construction by the judiciary is controlled by the intention of the Legislature. "All statutes, whether remedial or penal, should be construed according to the apparent intention of the Legislature, to be gathered from the language used, connected with the subject of legislation. . . ." *Rawson* v. *State,* 19 Conn. 292, 299; *State* v. *Faro,* 118 Conn. 267, 272, 171 Atl. 660; *Kelly* v. *Dewey,* 111 Conn. 281, 284, 149 Atl. 840. The concern of the courts is with the intent expressed by what the Legislature has said. "We must construe the act as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Murphy* v. *Way,* 107 Conn. 633, 639, 141 Atl. 858. Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them. This is especially so when it appears that the omission was intentional. 59 C. J. 974; *Strong*

v. *Strong,* 106 Conn. 76, 79, 137 Atl. 17. At most, an implied limitation upon the operation of a statute may only be made in recognition of long existing and generally accepted rights (*Kelley* v. *Killourey,* 81 Conn. 320, 322, 70 Atl. 1031) or to avoid consequences so absurd or unreasonable that the Legislature must be presumed not to have intended them. *Dorman* v. *Carlson,* 106 Conn. 200, 203, 137 Atl. 749; *Jacobson* v. *Massachusetts,* 197 U. S. 11, 39, 25 Sup. Ct. 358. Neither religious beliefs nor sociological or physiological views can be given weight in the determination. *Lanteen Laboratories, Inc.* v. *Clark,* 294 Ill. App. 81, 88, 13 N. E. (2d) 678, 680.

Any intention on the part of the Legislature to allow such an exception as would advantage the present defendants is negatived not only by the absolute language used originally and preserved ever since but also, signally, by its repeated and recent refusals to inject an exception. At each session from 1923 to and including 1931 a bill was introduced excepting from the operation of the statute (General Statutes, 1918, § 6399, General Statutes, 1930, § 6246) use upon prescription of a physician and sale to physicians or upon their prescription, but in each instance the bill was rejected. In 1933 a bill was introduced making a similar exception but limited to cases in which, in the opinion of the physician, "pregnancy would be detrimental to the health of the patient or to the child of such patient." This was amended in the House of Representatives so as to further limit the exception to married women and passed as amended but was rejected by the Senate. Upon report of a committee of conference the House reconsidered, further amended and passed the bill but no further action was taken in the Senate. In 1935 a bill similar to the original 1933 bill was introduced but not reported out by the judici-

ary committee to which it was finally referred. Patently we may not now attribute to the Legislature an accidental or unintentional omission to include the exception contended for by the defendants and necessary to place them outside the operation of the statutes. Rejection by the Legislature of a specific provision is most persuasive that the act should not be construed to include it. *Pennsylvania R. Co.* v. *International Coal Mining Co.,* 230 U. S. 184, 198, 33 Sup. Ct. 893.

The particular facts alleged in the information confine the issue to situations where, in the opinion of the physician, "the general health" of a married woman requires the use of contraceptives. Therefore there is no occasion to determine whether an implied exception might be recognized when "pregnancy would jeopardize life" [ground (b) supra] similar to that usually expressly made in statutes concerning abortion. See § 6056 of the General Statutes; *Commonwealth* v. *Sholes,* 95 Mass. 554, 558; 1 C. J. S. 322. It is significant, too, that by Chapter 205 of the Public Acts of 1895, § 6 (now § 6438 of the General Statutes), the Legislature expressly excepted medical textbooks and other purely medical literature from the application of statutes concerning circulation of obscene literature (now §§ 6244, 6435 of the General Statutes), cases in which miscarriage or abortion is necessary to preserve the life of the woman or of her unborn child are specifically excepted in §§ 6056, 6057 of the General Statutes, and in 1939 (Supplement, § 1433e) § 6058 of the General Statutes was amended so as to except sales to physicians and hospitals of medicines or instruments for producing abortion. The inference follows that if the General Assembly intended the exception from § 6246 now contended for it would have so expressed it.

A claim similar to that of the defendants was advanced in *Commonwealth* v. *Gardner* (1938, Mass.) 15 N. E. (2d) 222. The Massachusetts statute, G. L. (Ter. Ed.) Chapter 272, § 21, provides that "whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away . . . any drug, medicine, instrument or article whatever for the prevention of conception" shall be punished. The defendants contended that the statute did not apply when the contraceptive materials were intended for use only upon prescription by a physician "for the preservation of life or health according to sound and generally accepted medical practice" and that without such an exception the statute contravened the state and federal constitutions. The Supreme Judicial Court held that the terms of the statute were "sweeping, absolute, and devoid of ambiguity" and permitted no implied exceptions. In that case reliance was placed by the defendants, as it is here, in support of the claim of implied exception, upon certain decisions of federal circuit courts of appeal involving federal statutes other than § 512, Title 18, U. S. C. A. (post); *Youngs Rubber Corp., Inc.* v. *C. I. Lee & Co., Inc.*, 45 Fed. (2d) 103; *Davis* v. *United States*, 62 Fed. (2d) 473; *United States* v. *One Package*, 86 Fed. (2d) 737; *Slee* v. *Commission of Internal Revenue*, 42 Fed. (2d) 184, 72 A. L. R. 400; *United States* v. *One Book*, 51 Fed. (2d) 525. It was held, however, that such of these cases as were not clearly distinguishable were not persuasive in favor of adoption of the claimed exception by judicial interpretation, and we concur in this view after due consideration of the cited cases. The same may be said, so far as concerns the present informations, of the decision of the United States District Court for Puerto Rico in *United States* v. *Belaval* (1929), in which the federal cases above mentioned were regarded as author-

izing, as well, an exception in connection with § 512 (supra), which prohibits, inter alia, the furnishing of any drug, medicine or article for the prevention of conception, applicable and sufficient to the facts in that case in which, it appears, each of the women who were given contraceptive articles by the defendants "was suffering from diseases or conditions which in the judgment of the physicians might make it not only humane to prescribe contraceptive devices, but absolutely necessary to their lives."

The defendants' claims of unconstitutionality of the statute because of the breadth of the restriction imposed are, stated broadly, that it constitutes a deprivation of rights, and particularly of liberties, protected by Article 14th of the Amendments to the Constitution of the United States and § 9 of Article First of the Connecticut Constitution, and without due process of law. Since 1873, when Congress passed an act [17 Stat. at Large (1873) 598, U. S. C. A., §§ 334, 512] which included prohibition of the mailing or importation or furnishing of contraceptives, at least twenty-six states have passed laws relating to birth control. Of these, eight, including Connecticut and Massachusetts, attempt complete suppression; many prohibit publication of contraceptive information and advertisement of materials or offering advice or materials in any other manner; a few (including New York) contain exceptions which permit prescription under certain circumstances. There are only one or two states which have not, now, some form of statute regulating the distribution of obscene literature and "articles of indecent use." 45 Harvard Law Review (1932) 723; 6 University of Chicago Law Review (1939) 260; Stopes, Contraception, 354, 355. Notwithstanding, the constitutionality of these statutes has been questioned in very few cases and in those has

been sustained. 113 A. L. R. 970. As to the constitutionality of the Massachusetts statute involved in *Commonwealth* v. *Gardner*, supra, it was said (page 223) of 15 N. E. (2d) that in framing this legislation "under the police power the Legislature, without any denial of rights under either the state or federal constitution, might take the view that the use of contraceptives would not only promote sexual immorality but would expose the Commonwealth to other grave dangers" and might also deem that an exception of prevention by medical advice "would endanger the effectiveness of the statute" and not be "consonant with public policy. . . . The inference seems necessary that the moral and social wrongs arising from the prevention of conception appeared to the [Legislature] so threatening . . . when the statute was originally enacted, that absolute and unconditioned prohibition . . . was necessary to meet the conditions. A statute of that nature is constitutional," citing *Commonwealth* v. *Allison*, 227 Mass. 57, 116 N. E. 265; *Everard's Breweries* v. *Day*, 265 U. S. 545, 561, 563, 44 Sup. Ct. 628; *Lambert* v. *Yellowley*, 272 U. S. 581, 47 Sup. Ct. 210, 49 A. L. R. 575. In the present case, as already noted, the inference as to the belief of the Legislature in the necessity, for the public welfare, of prohibition without the suggested exception, deducible from the passage of the original statute, is supplemented and brought practically up to date by the consistent refusal of the General Assembly to admit the exception.

An attempt was made to have the decision in the *Gardner* case reviewed by the Supreme Court of the United States but the defendants' appeals were summarily denied (305 U. S. 559, 59 Sup. Ct. 90, 83 L. Ed. 353) "for want of a substantial Federal question," citing *Powell* v. *Pennsylvania*, 127 U. S. 678, 685, 8 Sup. Ct. 992; *Jacobson* v. *Massachusetts*, 197 U. S. 11,

26, 27, 25 Sup. Ct. 358; *Graves* v. *Minnesota,* 272 U. S. 425, 428, 47 Sup. Ct. 122; *Lambert* v. *Yellowley,* supra, 596. We infer that this action may not be interpreted otherwise than as confirming the constitutionality of the Massachusetts statute in the respects in which it was attacked in the *Gardner* case and, as already indicated, we regard the issues here as essentially analogous. The cases cited illustrate the familiar principles that the exercise by states of the police power to conserve the public safety and welfare, including health and morals, may not be interfered with if it has a real and substantial relation to those objects; and that the Legislature is primarily the judge of the regulations required to that end and its police statutes may only be declared unconstitutional when they are arbitrary or unreasonable attempts to exercise its authority in the public interest. As was done in *Jacobson* v. *Massachusetts,* supra, 30, concerning a compulsory vaccination statute, we must assume that when the statute was passed the Legislature was not unaware of opposing views concerning contraception and deliberately chose between them; this is certainly true as to the recent repeated refusals to modify the statute by amendment. *Lambert* v. *Yellowley,* supra, concerned the provision in the National Prohibition Act limiting the amount of liquor which might be prescribed for medicinal purposes and pointed out (pp. 594, 597) the opportunities for abuse through an unlimited privilege of prescription and (p. 596) that "there is no right to practice medicine which is not subordinate to the police power of the states."

In *People* v. *Byrne,* 163 N. Y. S. 682 (Supreme Court, Special Term, 1917) the constitutionality of the New York statute, § 1142, Penal Law (Consolidated Laws, Chap. 40) was upheld in a well reasoned discussion by Cropsey, J. The statute makes it a crime to sell, give

away, or exhibit, or possess with intent to do so, or to advertise for sale or distribution any article or drug for the prevention of conception or give information as to when or where the same can be obtained. While there was a statute (§ 1145) providing that physicians might use or prescribe such articles or drugs "for the cure or prevention of disease," the court held (p. 684) that § 1142 would be constitutional without the exception and even if, as does our statute, it prohibited use of such drugs or articles, the latter holding being in response to a claim by the defendant that the statute was unreasonable and oppressive "in that it prevents women who do not wish to bear children from adopting means to obviate that result." In the proper exercise of its police power the state may "regulate the relative rights and duties of all within its jurisdiction so as to guard the public morals, the public safety and the public health, as well as to promote . . . the common good." *House* v. *Mayes,* 219 U. S. 270, 282, 31 Sup. Ct. 234; *Jacobson* v. *Massachusetts,* supra, 25. The police power may be exerted in aid of what is sanctioned by usage, or held by the prevailing morality to be necessary to the public welfare. *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111, 31 Sup. Ct. 186. " ' The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority . . . essential to the safety, health, peace, good order and morals of the community.' " *Jacobson* v. *Massachusetts,* supra, 26, quoting *Crowley* v. *Christensen,* 137 U. S. 86, 89, 11 Sup. Ct. 13.

The defendants assert that people have a natural right "to decide whether or not they shall have children" and a concomitant right to use contraceptives if they decide not to have them. The civil liberty and natural rights of the individual under the federal and

state constitutions are subject to the limitation that he may not use them so as to injure his fellow citizens or endanger the vital interests of society. "Immunity in the mischievous use is as inconsistent with civil liberty as prohibition of harmless use." *State* v. *McKee,* 73 Conn. 18, 28, 46 Atl. 409. Conduct of the individual is subject to such direction and restraint as the public good requires. *People* v. *Armstrong,* 73 Mich. 288, 295, 41 N. W. 275. Whatever may be our own opinion regarding the general subject, it is not for us to say that the Legislature might not reasonably hold that the artificial limitation of even legitimate childbearing would be inimical to the public welfare and, as well, that use of contraceptives, and assistance therein or tending thereto, would be injurious to public morals; indeed, it is not precluded from considering that not all married people are immune from temptation or inclination to extra-marital indulgence, as to which risk of illegitimate pregnancy is a recognized deterrent deemed desirable in the interests of morality.

As to a contention that the statute unconstitutionally "interferes with the free exercise of conscience and the pursuit of happiness" it is noted in *People* v. *Byrne,* supra, 687, that a like claim could be made, with no more force, as to statutes prohibiting adultery, or fornication, or any one of many other crimes. The Legislature might regard the use of materials designed to prevent conception as prejudicial to public morals and inimical to the welfare and interests of the community, as the general dissemination of information as to how it could be accomplished, like distribution of obscene literature, plainly would be. *People* v. *Byrne,* supra, 686; *State* v. *McKee,* supra, 30. Like an advertisement representing that and how venereal diseases can be easily and cheaply cured, information and advice as to means, or furnishing materials intended

for, contraception may be said to have "a decided tendency to minimize unduly the disastrous consequences of indulgence in dissolute action" (*State* v. *Hollingshead,* 77 Ore. 473, 477, 151 Pac. 711), as well as expose interested and uninformed persons to dangers from the use of drugs and devices injurious to health or even life. Fortune, February, 1938, pp. 83, 110. To permit the use of contraceptives in all cases when, in the opinion of even an honest and reputable physician, pregnancy would affect "general health" might well make it available to most women, in view of the commonly known ordinary incidents and normal consequences of that condition (idem, p. 112), while it would be in the power of less ethical and conscientious practitioners to extend the field of exemption indefinitely.

The rule is well settled that the police power may be exerted to preserve and protect the public morals. 11 Am. Jur. 1024. It was said in *Commonwealth* v. *Allison,* 227 Mass. 57, 62, 116 N. E. 265, as to the purpose of statutes including that later involved in *Commonwealth* v. *Gardner,* supra, "manifestly they are designed to promote the public morals and in a broad sense the public health and safety. Their plain purpose is to protect purity, to preserve chastity, to encourage continence and self-restraint, to defend the sanctity of the home, and thus engender . . . a virile and virtuous race of men and women." It is reasonable to assume that similar motives underlay the adoption of our own statute in 1879 and, at least in some degree, the subsequent refusal to relax the provisions of § 6246, and it is not open to us to hold that they are so fallacious or unreasonable as to invalidate the act. *State* v. *McKee,* supra, 30. If, as the defendants suggest, a purpose, either principal or incidental, was to promote a maintenance and increase of population, that would not be an inadmissible motive and the

efficacy, to that end, of the provision would be a legislative question. For a court to decide upon the degree of necessity for legislation "would be to pass the line which circumscribes the judicial department and to tread upon legislative ground." *Everard's Breweries* v. *Day,* supra, 559. If all that can be said is that it is unwise or unreasonably comprehensive, appeal must be to the Legislature, not to the judiciary. *Powell* v. *Pennsylvania,* 127 U. S. 678, 686, 8 Sup. Ct. 992; *Engel* v. *O'Malley,* 219 U. S. 128, 137, 31 Sup. Ct. 190. For this reason the propaganda and arguments in support of the use of contraceptives upon advice of physicians, which are contained in and appended to the briefs in behalf of the defendants, are appropriately to be addressed to the General Assembly rather than to the courts.

. Another asserted ground of demurrer is that § 6246 is unconstitutional because it does not prescribe the maximum fine which may be imposed, specifying only the minimum, the claim being that the power to fix the limits of fines is exclusively in the General Assembly. The only relevant provision in our Constitution is § 13 of Article First—"excessive bail shall not be required nor excessive fines imposed." Although it is customary to prescribe in statutes both minimum and maximum fines, we have not, as have some states, any constitutional direction that the Legislature shall do so, and lacking such a provision we see no reason to regard such prescription as mandatory. *Frese* v. *Florida,* 23 Fla. 267, 270, 2 So. 1; *In re Yell,* 107 Mich. 228, 230, 65 N. W. 97; *Southern Express Co.* v. *Walker,* 92 Va. 59, 66, 22 S. E. 809; 16 C. J. 1359; *State* v. *Costantino,* 76 Vt. 192, 196, 56 Atl. 1101. Although the benefit of § 13 doubtless extends to fines specifically fixed by the Legislature (*State* v. *Griffith,* 83 Conn. 1, 4, 74 Atl. 1068, 218 U. S. 563, 31 Sup. Ct. 132; *Blyden-*

*burgh* v. *Miles,* 39 Conn. 484, 497) it is equally applicable to fines, excessive in amount, imposed by a court. This is evidenced by the inclusion, in the same provision, of restriction of amount of bail, the fixing of which is distinctively the function of a court. It is primarily designed to restrain abuse of discretion of courts. *In re Kemmler,* 136 U. S. 436, 446, 10 Sup. Ct. 930.

We conclude that the statute is not unconstitutional in any of the respects above mentioned. The statute (§ 6246) itself affords a sufficient answer to the further claim that it does not fix a reasonably precise standard of guilt. It is obvious that there is no merit in the principal claim advanced which is that "medicinal" may be construed as characterizing "instrument" as well as "article" so that use of a mechanical instrument would not be prohibited, and it is equally plain that a calendar when referred to for the purposes of the so-called "rhythm system" for periodic abstention cannot be regarded as an "instrument" within the purview of the statute.

There is error, the judgments are set aside and the cases remanded to the Superior Court with direction to overrule the demurrers.

In this opinion MALTBIE, C. J., and BROWN, J., concurred; AVERY and JENNINGS, Js., dissented.