[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 18, 1995
In this administrative appeal, Susan S. Starr appeals from the determination of the respondent Commissioner of Environmental Protection ("Commissioner") that she is not an "innocent landowner" within the meaning of P.A. 93-375 with respect to an order to abate pollution on a parcel of land located on Simon Road in Enfield.
Starr alleges that the Commissioner's determination was made upon unlawful procedure, was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, was arbitrary or capricious or characterized by abuse of discretion, and was issued in disregard of relevant evidence contained in the record.
Starr also alleges that the Commissioner "improperly issued his decision based upon information or considerations outside the record."
Procedural History
It is undisputed that on July 9, 1990, the Commissioner issued Order No. SRD-001 to Susan S. Starr pursuant to General Statutes §§ 22a-432 and 22a-433
ordering her to eliminate soil, surface and groundwater pollution on a 44.3-acre parcel of land on Simon Road in Enfield. Starr's appeal of the order was decided by an adjudicator appointed by the Commissioner. Starr appealed his adverse decision to the Superior Court, which concluded that the Commissioner had erred in imposing liability for elimination of pollution without regard to the owner's lack of involvement in the creation of the polluting conditions and had erroneously and illegally found her to be "maintaining" the conditions within the meaning of General Statutes § 22a-432. The trial court ruled that the Commissioner could not pursue an enforcement action against the plaintiff without first attempting to CT Page 850 proceed against the actual polluters. The Commissioner appealed the ruling of the trial court. By a decision released on July 6, 1993, the Supreme Court reversed the trial court and remanded with direction to dismiss the plaintiff's administrative appeal. Starr v. Commissionerof Environmental Protection, 226 Conn. 358 (1993).
Approximately a week before the issuance of the decision of the Supreme Court, the General Assembly enacted Public Act 93-375, the "Innocent Landowner Act," and it is undisputed that the terms of that statute are applicable to the enforcement order issued to the plaintiff. The following procedural history is likewise undisputed: on July 12, 1993 the plaintiff filed a motion for reconsideration pursuant to General Statutes § 4-181a(b) requesting that the Commissioner reconsider his final decision in light of P.A. 93-375; that the Commissioner granted this motion and conducted a hearing on the issue of whether the plaintiff should be considered an "innocent landowner" pursuant to P.A. 93-375; and that on January 25, 1994 the Commissioner issued a decision concluding that the plaintiff was not an "innocent landowner" but was fully liable for abatement of pollution on the Enfield property. The plaintiff timely filed this appeal from that adjudication.
Aggrievement
The court finds that on the basis of her ownership of the property at issue and her liability for the costs of complying with the Commissioner's order, the plaintiff is an aggrieved person who may maintain this appeal from the decision of the Commissioner.
Bias
The court takes up as an initial inquiry the plaintiff's claim that the Commissioner's decision was the product of bias and/or that it was based on impermissible ex parte communications.
This court conducted a hearing on these issues. SeeClisham v. Board of Police Commissioners,223 Conn. 354, 370-71 (1992). At that hearing, David Collins, a real estate appraiser, testified that in the course of CT Page 851 appraising some real property for Commissioner Timothy Keeney in the spring of 1991, he engaged in small talk including an inquiry as to Keeney's new position as Commissioner. Collins testified that the Commissioner's response included the following statement: "[w]e're quite busy with a property in Enfield which the owner inherited. She says she knows nothing of the problems, yet she was secretary of the corporation. I find that hard to believe."
The Commissioner testified that he had no recollection of any such statement, though he did recall having talked with Collins on several occasions in connection with appraisals of family property.
This court finds that while Commissioner Keeney had little reason to remember such a remark, Collins had reason to note and remember this comment. He had done considerable work for the late Leger Starr, the plaintiff's husband, over many years and would naturally have been interested in an official's comment on a dispute involving another client. Since Mrs. Starr's problems with the Enfield property had been well-publicized, Collins had ample basis for making the connection between the Commissioner's vague description and the Starr property.
The Commissioner takes the position that any bias revealed by any comment to Collins was waived because it was not raised at the hearing on reconsideration of the enforcement order. The plaintiff asserts that the reason the claim of bias was not raised was that Collins did not mention the Commissioner's comment to her counsel until after the hearing. The court finds this implausible.
Collins revealed himself to be a garrulous person who tended to answer questions in court by first supplying considerable background information and extraneous details that he found interesting. He and another witness, Atty. Thomas Tyler, testified that during a break in the reconsideration hearing, they were standing in a smoking area when the Commissioner passed by, and that Collins then chatted to Tyler about having done private work for the Commissioner. CT Page 852 This court does not find it credible that Collins would have failed to convey at that time so noteworthy a piece of information as a statement by the Commissioner concerning the very case that was the subject of the hearing that both men were attending. Collins was present at the hearing to testify as to what the procedure was with regard to a transferee's inspection of property for environmental problems. So closely related a fact as an observation about Starr's actual knowledge would surely have been mentioned.
While Collins takes the position that he had no knowledge of any legal significance of the Commissioner's having made such a comment, his retention of the memory of it indicates that he did, in fact, find it significant. Though Atty. Tyler was not counsel of record at the hearing, he was legal counsel to Mrs. Starr and had acted as such in asking Collins to testify at the October 1993 hearing. At his deposition, Mr. Collins testified initially that he told either Atty. Tyler, or Atty. Eldergill, who was counsel of record, about the Commissioner's comment before the hearing was concluded. Though he retreated from this recollection upon examination by Atty. Eldergill, this court finds that counsel for the plaintiff were made aware of the comment before the October 1993 hearing was concluded but failed to make use of that information to move to disqualify the Commissioner on the ground of bias before the issue was decided.
The plaintiff asserts that any communication by Collins to Tyler should not be treated as knowledge she had as to bias. Since it is conceded that Tyler was the attorney who was contacting witnesses for the October 1993 hearing, the court finds that he was acting as the plaintiff's counsel, and was present both as a witness and to help represent her interests at the hearing whether or not he was counsel of record. It is well established that a party is bound by the procedural choices of her counsel. Nisbet v. Olmeda,15 Conn. App. 6, 17 (1988), and that notice to counsel is imputed to the client. Lafayette Bank Trust Co. v.Aetna Casualty Surety Co., 177 Conn. 137, 140 (1979).
The failure to raise a claim of disqualification with CT Page 853 reasonable promptness after learning the ground for such a claim ordinarily constitutes a waiver of that claim.Henderson v. Department of Motor Vehicles,202 Conn. 453, 462 (1987); Timm v. Timm, 195 Conn. 202,205 (1985). A party may not withhold a claim of disqualification, reserving a right to impeach or set aside an unfavorable decision for a cause known to the party before or during the adjudication. Clisham v. Board of PoliceCommissioners, 223 Conn. 354, 367-68 (1992); Hendersonv. Department of Motor Vehicles, id; Krattenstein v.G. Fox Co., 155 Conn. 609, 616 (1967).
The court finds that, more probably than not, the plaintiff, through her legal representatives, knew of the Commissioner's comment about the case before or during the hearing and did not move to disqualify the Commissioner as the adjudicator. She has therefore waived any claim of bias or prejudgment. Even if the claim of bias was not waived, there is further reason for finding that the Commissioner's remark is not a reason to reject the outcome of the hearing: because the Commissioner expressly found that the plaintiff had no actual knowledge of the pollution on the land at issue, the skepticism reflected in his remark to Collins does not appear to have influenced his decision on that very issue.
Ex Parte Communication
The plaintiff alternatively claims that the comment that Collins claimed the Commissioner made in 1992 about the enforcement action against Starr revealed an ex parte communication that is a ground for setting aside the ruling. General Statutes § 4-181 of the Uniform Administrative Procedure Act (UAPA) prohibits an adjudicator in an administrative proceeding from "communicat[ing], directly or indirectly, in connection with any issues of fact, with any person or party, or, in connection with any issue of law, with any party or the party's representative, without notice and opportunity for all parties to participate."
It is unclear whether the plaintiff considers the ex parte communication to be the Commissioner's statement to Collins or some unidentified communication by which he acquired the information contained in CT Page 854 that statement. The record of the prior hearing would have contained of all of the information reflected in the Commissioner's remark to Collins. That remark does not constitute an ex parte communication as defined by General Statutes § 4-181, and even if it did, this court has found that the plaintiff, by counsel, had knowledge of the statement prior to the conclusion of the adjudication and waived any objection to the Commissioner's serving as the hearing officer by failing to raise the issue in timely fashion. Henderson v.Department of Motor Vehicles, 202 Conn. 461-62.
Scope of Review
The scope of judicial review of the decision of administrative agencies is well established:
 Even as to questions of law, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted; emphasis in original.)
Perkins v. Freedom of Information Commission,228 Conn. 158, 165 (1993), citing New Haven v. Freedom ofInformation Commission, 205 Conn. 767, 774 (1988).
An administrative determination may be set aside only if a plaintiff proves any of the grounds set forth in General Statutes § 4-183(j).
The Connecticut Supreme Court has repeatedly observed that although the interpretation of statutes is ultimately a question of law, it will "accord great deference to the construction given [a] statute by the agency charged with its enforcement." Perkins v. Freedomof Information Commission, 228 Conn. 165; GriffinHospital v. Commission on Hospitals Health Care,200 Conn. 489, 496 (1986). CT Page 855
In recent decisions, however, the Appellate Court has ruled, without citing any of the Supreme Court rulings cited above, that less deference is to be accorded an administrative agency's interpretation of a statute which is not within its specific area of enforcement. See Baerst v. State Board of Education,34 Conn. App. 567, 571 (1994), citing Foti v. Richardson,30 Conn. App. 463, 466 (1993); Fleischman v. Board ofExaminers in Podiatry, 22 Conn. App. 181, 184 (1990).
The Supreme Court does not, however, appear to have approved such an approach where the agency has been entrusted with enforcement of the particular statute at issue. Indeed, in Starr v. Commissioner ofEnvironmental Protection, 226 Conn. 358, 373 (1993), the Court faulted the trial court for failing to give due deference to the Commissioner's legal interpretation of General Statutes § 22a-432, which concerns the liability of a landowner who "maintains" a polluting condition on his or her property.
Even more recently, in Pet v. Department of HealthServices, 228 Conn. 651, 660 (1994), the Supreme Court reiterated that judicial review of conclusions of law reached administratively in applying a statute is limited to a determination whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. In Perkinsv. Freedom of Information Commission, 228 Conn. 158,165 (1994), the Court likewise affirmed "the well-established practice of this court to accord great deference to the construction given a statute by the agency charged with its enforcement."
Where, however, the legal determination at issue is not the construction of the statute that the agency is entrusted to enforce, but rather the applicability of some other legal principle not specifically germane to the expertise of the administrative agency, it appears that the same deference is not due. In West HartfordInterfaith Coalition, Inc. v. Town Council,228 Conn. 498, 507 (1994), the Supreme Court considered whether a particular statute was applicable to a request for a zone change. The defendant agency appealed on the basis that the trial court had, by CT Page 856 implication, held that General Statutes § 8-30g applied to legislative zone changes. The Supreme Court treated the issue of the applicability of § 8-30g as "a question of law for the courts . . . particularly where, as here, the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations."West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 507. Similarly, in Jutkowitz v.Department of Health Services, 220 Conn. 86, 106
(1991), the Supreme Court held that the decision of the state board of chiropractic examiners was not entitled to deference, and applied general principles of statutory construction.
This court must therefore determine whether the Commissioner's legal interpretation was made on a subject as to which his agency is to be accorded deference. If it was, the court must apply the standard of review of Perkins and Griffin Hospital, supra; if not, the standard of review of West Hartford InterfaithCouncil and Jutkowitz, supra, applies.
Determination on Inheritance
The first determination challenged by the plaintiff in this appeal is the Commissioner's conclusion that she was not an "innocent landowner" within the meaning of P.A. 93-375 by virtue of having acquired the polluted land "by inheritance or bequest."
P.A. 93-375, § 2(a), provides in pertinent part that an innocent owner of polluted land
 shall not be liable, except through imposition of a lien against that [land] under section 2a-452a of the general statutes, for any assessment, fine or other costs imposed by the state for the containment, removal or mitigation of such [pollution].
A person is an "innocent landowner" and is subject to liability only up to the value of the land if
 at the time of acquisition, the person (i) does not know and has no reason to know of the [pollution], and inquires, consistent with good commercial or CT Page 857 customary practices, into the previous uses of the property; (ii) is a government entity; (iii) acquires the interest in [the land] by inheritance or bequest; . . .
Pursuant to P.A. 93-375, Mrs. Starr had the burden of establishing her status as an innocent landowner. She sought to do that by showing that she acquired the property by inheritance or bequest. In the alternative, she sought to establish that she had, at the time of acquisition, made the customary inquiries.
The Commissioner made the legal determination that Mrs. Starr had not acquired the property by inheritance or bequest because what she inherited when her husband died in 1976 was not the property but his shares in corporations that owned the property. The Commissioner found that the property at issue was owned at the time of Leger Starr's death by three corporations, Don, Inc., LS Realty, Inc. and Mountview, Inc., all real estate development corporations (Commissioner's Decision, at page 7), and that the plaintiff did not therefore inherit the land from her husband because the land was owned by the corporations, whose separate existences must be acknowledged.
The legal determination made by the Commissioner is thus that a party who inherited shares in corporations has not inherited the assets that those shares represent. The interpretation of laws concerning inheritance and corporate shares cannot be said to be within the special expertise of the agency headed by the Commissioner of Environmental Protection. Accordingly, his determination with regard to such issues is not entitled to deference; and in construing P.A. 93-375, this court must seek "to ascertain and give effect to the apparent intent of the legislature." WestHartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 507; Vaillancourt v. New Britain Machine/Litton,224 Conn. 382, 390 (1993).
When the language of a statute is clear and unambiguous, a court need look no further than the words themselves because of the assumption that the language used expresses the legislature's intent. CT Page 858Vaillancourt v. New Britain Machine/Litton,224 Conn. 390; American Universal Insurance Co. v. DelGreco,205 Conn. 178, 193 (1987). Only when the intent of the legislature is unclear may courts ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve.Vaillancourt, 224 Conn. 391, Weinberg v. ARA VendingCo., 223 Conn. 336, 341 (1992). The courts are also required to presume that the legislature intended a just and rational result. Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 187 (1991).
The Innocent Landowner Act extends a limitation of liability up to the value of the property to a person who acquires an interest in real estate who is "not otherwise liable for the spill or discharge . . ." and who "acquires the interest in real estate by inheritance or bequest." P.A. 93-375 § 1(B)(iii). The issue is whether the inheritance must be a direct one of land held by the decedent in his own name to an heir, or whether a person who inherits shares that are later converted into real estate has likewise acquired the interest by inheritance.
"Inheritance"
The Commissioner rejected the plaintiff's inheritance basis for innocent landowner status on two grounds: 1) that an acquisition from the estate of a testate decedent is not an "inheritance"; and 2) that the land was not in the estate at the time of death but became part of it only as a result of liquidation of corporate shares.
The Commissioner urges that the court should construe P.A. 93-375 as encompassing only the narrow legal definition of "inheritance" as the acquisition of property from intestate succession; Adanowich v.Sherwood, 19 Conn. Sup. 89, 92 (1954); Black's Law Dictionary, 6th ed.; and a "bequest" as a gift of personal property. Black's Law Dictionary, 6th ed. This court does not find that the concern that led the legislature to create an "innocent landowner" defense was limited to the selection of such particular technical CT Page 859 methods of acquisition. The use of the term "bequest" is nonsensical if that term is read as applying only to personalty, since the statute is concerned with ownership of land. The general context of the enactment suggests that the legislature used the term "inheritance or bequest" not in a technical manner but according to the commonly understood meaning of acquisition by devise or descent, which is the second meaning set forth in Black's Law Dictionary (6th ed.).
In construing a statute, a court must avoid a construction that fails to attain the rational and sensible result that bears directly on the purpose the legislature sought to achieve. Turner v. Turner, 219 Conn. 703,712-13, 717 (1991).
This court finds that the provision of a defense to those who acquire property by inheritance or bequest applies in the case of property received as an asset of an estate of a testate decedent and that the Commissioner's construction restricting application to intestate succession is contrary to law and therefore an abuse of discretion.
Shares vs. Land
The Commissioner's further analysis is that the plaintiff acquired only shares in corporations, not an interest in real property, by inheritance, since only the former were part of the inventoried estate. This analysis ignores the fact that the estate did not distribute the shares to the plaintiff. Rather, the estate received the land from the corporate owner, such that at the time of distribution of the assets of the estate, it was an interest in land, not shares, that was distributed. The Commissioner implies that because the plaintiff was the corporate officer who merged and then dissolved the corporations, causing the estate's shares to be converted into an interest in real estate, there is some disqualification of the status of the acquisition as an inheritance. The statute at issue does not, on its face, limit the defense of inheritance to those who inherit real estate that was in the estate at the time of the testator's death. The statute does impose such a limitation as to executors, trustees or administrators CT Page 860 who receive an interest in real estate from a decedent's estate and as to them confers the innocent landowner defense only "provided such decedent was the person holding the interest in real estate." P.A. 93-375(1)(B)(iv). Such a limitation would remove the defense as to property a trustee or executor bought on behalf of the estate and then took as a fee. The limiting language in subsection (iv) of P.A. 93-375(1)(B) is not reflected in subsection (iii), and this difference appears to require a construction that an inheritor is an innocent landowner as to the real estate inherited from an estate even if that estate acquired the real estate through the liquidation of estate assets after the decedent's death.[1]
The presence of a limitation in subsection (iv) and its absence in subsection (iii) must be given effect.State v. Baker; 195 Conn. 598, 601-02 (1985); State exrel Kennedy v. Frauwirth, 167 Conn. 165, 168 (1974). Neither courts nor administrative agencies may by construction add exceptions to statutes merely because it appears that good reasons exist for adding them. State v. Baker; 195 Conn. 602; State v. Nelson,126 Conn. 412, 416 (1940).
Partial Inheritance
The Commissioner found that at the time of Leger Starr's death, he was not the owner of the property at issue. Rather, that property belonged to several corporations, Don, Inc., CS Realty, Inc. and Mountview, Inc. The Commissioner further found that Leger Starr was not the sole shareholder of any of these corporations but that the inventory of the assets of the estate indicates that he owned between 49 and 59 shares in each corporation, and that the total number of issued shares of stock in each corporation was not proven. At the reconsideration hearing, Susan Starr testified that she had also owned stock in each of the three corporations that owned the land at issue and that though she didn't recall how many shares she owned, she thought she owned one share, her sister owned one, and her husband owned 98 out of a total of 100 shares for each corporation. (Tr. 68, 71.) The plaintiff testified that she was secretary of each of these corporations CT Page 861 before her husband's death and that she became president of each thereafter. It is undisputed that the assets of all three corporations were merged into a corporation known as Dale, Inc. (DEP EX 6), that Dale, Inc. thereby became the owner of the land at issue, and that Dale, Inc. was dissolved. Upon dissolution, Dale, Inc. quitclaimed all interest in the land at issue to the estate of Leger Starr in 1984, about eight years after his death.
The Commissioner ruled that Susan Starr became the owner of the land at issue not by virtue of inheritance but by virtue of the dissolution of Dale, Inc., of which she was president.
Absent considerations not claimed in the case before this court, a corporation is indisputably a legal entity separate and distinct from its shareholders, even its majority shareholders. Saphir v. Newstadt,177 Conn. 191, 209 (1979); Zaist v. Olson,154 Conn. 563, 573-74 (1967).
Only upon the dissolution of a corporation do its assets become the assets of the shareholders, after payment of debts, at which point the interests of each shareholder becomes a vested equitable right to a pro rata share of the corporate assets. Fletcher, Cyclopedia on Corporations, § 8130, 8224 (1988).
General Statutes § 33-380 provides that when a corporation is dissolved, the remainder of its assets, after payment of liabilities, shall be distributed "either in cash or in kind" in one or more liquidating distributions among it shareholders, "according to their respective rights and interests."
The record does not indicate that the estate of Leger Starr received only the share of the assets of Dale, Inc. that corresponded to his portion of the share of the three predecessor corporations. On the basis of the inventory of the estate, with its indication that the decedent owned 49 to 59 shares in each corporation, and on the basis of the plaintiff's testimony that there were 100 shares of outstanding stock as to each corporation, the record supports a finding by the CT Page 862 Commissioner that the plaintiff's ownership of the land was at least in part the result of her entitlement pursuant to § 33-380 to receive a pro rata share of the corporation's assets corresponding to her pro rata share of the issued stock, and that she acquired this interest by operation of law in her capacity as a shareholder and not by inheritance.
On its face, P.A. 93-375 does not extend the innocent landowner defense to those who acquire an interest in land through liquidation of shares in a corporation that owns that land. The enactment is silent as to whether and to what extent the defense would apply to a landowner whose interest is partly inherited and partly acquired by such other means.
The legislative history of P.A. 93-375 provides no basis for thinking that the legislature meant to limit the liability of persons who had received only a part of their ownership interest in land by inheritance. To construe such an unexpressed intention would lead to results very likely not within the legislature's intent. For example, if two business partners owned undivided interests in land that they knew had been polluted before they bought it, a party who inherited the share of the other partner upon his death could claim to be an innocent landowner, even though half of his or her interest preceded the inheritance and was thus not involuntary or inadvertent.
A memorandum from the Connecticut Law Revision Commission to the Co-Chairmen of the Judiciary Committee, dated January 20, 1993 (appended to plaintiff's brief) indicates at page 2 that the concept of "innocence" with regard to ownership of polluted land is meant to apply to landowners who "hold or acquire title to land that is contaminated without knowing of the contamination and without having acted in any way to cause the contamination." The legislative history as a whole does not reveal any intent to confer a status of "innocence" on a party who had a pre-acquisition opportunity to inquire about contamination merely because of an intervening partial inheritance of another's interest in the same land. CT Page 863
To be sure, there is no evidence that the plaintiff knew that the land owned by the corporation in which she was a shareholder was contaminated, and the Commissioner has so ruled. Since her acquisition was not wholly by inheritance, however, the Commissioner correctly went on to consider whether she should be considered an innocent landowner under another section of P.A. 93-375, that is, § B(i), which is applicable to a person who acquires an interest in real estate and "does not know and has no reason to know of the spill or discharge and inquires, consistent with good commercial or customary practices, into the previous uses of the property."
The plaintiff argues, in effect that because her situation was, in part, the impetus for the creation of the "innocent landowner" defense, she is entitled to qualify as an innocent landowner regardless of the fact that her acquisition was only partly by inheritance.
The Connecticut Law Revision Commission noted that the request for a draft of an innocent landowner defense arose out of the trial court's decision in the initial appeal in Starr, since in the absence of a statutory defense, the trial court was left to construe a common law defense. Neither the Commission's discussion of its charge to draft a statute providing for an "innocent landowner" defense nor the floor debate indicates any recognition that the plaintiff had inherited only part of her interest in the property and that part had come to her, or should have come to her, as a result of liquidation of her own shares of stock. In floor debate, Rep. Tulisano declared that the enactment was not meant to address the precise circumstances of the Starr case but that the trial court's decision had served to make sponsors aware of the need to address the issue whether all holders of contaminated land should be subject to unlimited liability for remediation. (House of Representatives, June 7, 1993 p. 368.)
The Commissioner was not required to find that the defense enacted actually applied to the plaintiff simply because her prior litigation spurred the legislature to address the issue. Any interpretation of P.A. 93-375 CT Page 864 as specifically requiring the plaintiff in this case to prevail would violate Article First, Section 1 of the Constitution of the State of Connecticut, which prohibits private emoluments. See Merly v. State,211 Conn. 199 (1989).
Diligent Acquirer
As detailed above, the record reveals that only part of the plaintiff's interest in land legally came to her by inheritance and that part was hers as the result of liquidation of her own shares or by gift from the liquidation of her sister's shares. P.A. 93-375 is silent as to the availability of the innocent landowner defense as to a landowner who has acquired only part of her interest by inheritance. Accordingly, the Commissioner properly went on to consider whether the plaintiff was an innocent landowner pursuant to another section of the statute, subsection (B)(i), which extends the defense to one who, at the time of acquisition, "does not know and has no reason to know of the spill or discharges, and inquires, consistent with good commercial or customary practices, into the previous uses of the property."
The Commissioner found that at the time the plaintiff received a deed for the estate's interest in the property, she had no actual knowledge that this raw land had ever been contaminated. The Commissioner found, however, that she had not discharged her burden of proving that she had made "inquiries, consistent with good commercial or customary practices, into the previous uses of the property."
This court has found that the Commissioner correctly recognized that some of the plaintiff's interest in the property was acquired not by inheritance but by virtue of the dissolution of Dale, Inc. in February of 1984 or at the time of the ultimate distribution of that interest from the estate in January of 1987.
The plaintiff presented the testimony of her attorney, Mr. Tyler, and of the appraiser David Collins, who had inspected the property before the transfer to her. The plaintiff takes the position that through their CT Page 865 testimony she proved that she had performed the required inquiries to the extent customary at the time for land being acquired from a corporation dominated by members of the same family. The Commissioner presented no evidence as to the customary practices at the time. The Commissioner ruled, in effect, that the plaintiff's witnesses were not credible, that he did not believe their statements to the effect that a cursory investigation was the prevalent practice in and before 1987, and that the plaintiff therefore did not prove her entitlement to immunity by a preponderance of the evidence.
P.A. 93-375 § 2 provides that a person who raises the defense of status as an innocent landowner "must establish that he is an innocent landowner by a preponderance of the evidence." The same section of the statute provides that "in determining whether a person is an innocent landowner, a court may take into account any specialized knowledge or experience of the person, the relationship of the consideration paid for the interest in the real estate to the value of such interest if the real estate were not polluted, commonly known or reasonably ascertainable information about the real estate, the obviousness of the presence or likely presence of the spill or discharge, and the ability to detect such spill or discharge by appropriate inspection." The same scope of inquiry would appear to apply to the Commissioner's administrative determination.
The Commissioner did not make his finding in this case based on a choice between conflicting evidence as to the custom of the time. Rather, he did not believe the only witnesses who testified as to the custom at the time and found that because evidence of pollution was obvious upon inspection in 1989, two years after the plaintiff acquired the property, it "should have been obvious" at the time of acquisition, which he took to be January 1987. (Commissioner's Ruling, p. 12.) Such disbelief necessarily implies a finding that the custom was other than what was described by plaintiff's witnesses. The Commissioner further inferred that if the conditions observable in 1989 and later were observable in January 1987, the custom would have been for land appraisers and legal counsel CT Page 866 to investigate to discover if they were the result of pollution or contamination and so advise the client who was contemplating acquisition.
Implied in the Commissioner's discussion of the issue of diligent inquiry is the assumption that it was the custom or practice of persons acquiring raw land in January 1987 and before, either by themselves or by expert agents, to examine the property, appreciate the significance of conditions such as discolored soil and debris, recognize such conditions as likely to give rise to exposure to liability for environmental cleanup, and inquire further into past uses of the land. No witness confirmed the existence of such custom at the relevant time, and the plaintiff had no opportunity to cross examine or rebut whatever source there was for a conclusion that the custom was as implied in the Commissioner's ruling. Similarly, no witness stated that the conditions observable in 1989 would have been observable in January 1987 or before.
The Connecticut Supreme Court has consistently held that in contested cases, "[b]efore an administrative agency may lawfully rely on material nonrecord facts within its special knowledge and experience or which it has learned through investigation, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage of the proceedings."New England Rehabilitation Hospital of Hartford,Inc. v. CHHC, 226 Conn. 105, 142, 149 (1993); Parsonsv. Board of Zoning Appeals, 140 Conn. 290, 292-93
(1953); Jaffe v. Department of Health, 135 Conn. 339,346 (1949).
Though an administrative agency may amass facts on its own, the Supreme Court has reiterated that "it is improper for it to base a decision or findings upon facts so obtained, unless such evidence is introduced at a hearing or otherwise brought to the knowledge of the interested parties prior to the decision, with an opportunity to explain and rebut." New England RehabilitationHospital of Hartford, Inc. v. CHHC, 226 Conn. 149-50.
The administrative record is simply devoid of any evidence, other than that adduced by the plaintiff, as CT Page 867 to what the custom of inquiry was in January 1987 by a person about to acquire property as a result of the dissolution of a corporation in which she was a shareholder. It may well be that there was a different custom as to that kind of acquisition than as to, for example, an arm's length purchase of land.
The plaintiff was not advised that the department of environmental protection had investigated or ascertained the relevant practices with regard to such acquisitions of land at the time, nor what the findings of any such investigation were. Consequently, the plaintiff had no reason to be aware of a necessity to rebut through evidence of, for example, experts other than the persons she had actually employed.
The court finds that the Commissioner's determination that the plaintiff had not proven that she was an innocent landowner pursuant to § 1(B)(i) of P.A. 93-375 was made upon unlawful procedure. Pursuant to General Statutes § 4-183(j), the court hereby orders a remand for further proceedings on the issue whether the plaintiff's inquiry into the previous uses of the property was "consistent with good commercial or customary practices" such as to entitle her to "innocent landowner" status pursuant to P.A. 93-375(1)(B)(i). At that hearing, any information or standards to be relied upon by the DEP shall be presented on the record in order to provide a fair opportunity for cross examination and rebuttal.